GULUF TORSTENSON ET AL., APPELLANTS, V. HAROLD MELCHER, APPELLEE.

241 N. W. 2d 103

Filed April 14, 1976. No. 40223.

Frederick M. Deutsch of Deutsch & Hagen, for appellants.

Edward E. Hannon and Michael O. Johanns of Cronin & Hannon, for appellee.

Heard before SPENCER, NEWTON, and CLINTON, JJ., and WARREN and RIST, District Judges.

SPENCER, J.

This was an action to recover the purchase price of a registered Hereford bull and resulting damages by reason of express and implied warranties. A jury returned a verdict for the defendant. Plaintiffs appeal, alleging an erroneous instruction on exclusion of an implied warranty, and the insufficiency of evidence to support the verdict. We affirm.

Plaintiffs, father and son, have been engaged in the registered Hereford cattle business in Pierce County since 1949. They run 60 to 70 cows on their 345-acre farm. The defendant has been in the registered Hereford cattle business since 1948 on a 4,500-acre Holt County ranch. He sells about 150 Hereford bulls each year.

Prior to April 8, 1972, plaintiffs went to the defendant's ranch to look at bulls. They were particularly impressed with a certain 2-year-old bull, and questioned Melcher about his price. Melcher responded that the bull had been consigned to sale at auction on April 8, 1972, and that he would sell the bull at that time.

Prior to the sale, Melcher sent a sale catalogue to

prospective buyers, including the plaintiffs. The catalogue contained the following notice: "All animals are guaranteed to be without known defects. Animal failing to breed after trial of six months may be returned to the seller if in good condition. The seller reserves the right to try said animal for six months and if it proves a breeder to return it to the station of the buyer at his expense. If animal proves a non-breeder, a satisfactory exchange will be made or the purchase price will be refunded."

Plaintiffs purchased the bull at the sale for $3,600. The bull, named H M Silver Domino 10, was then taken to the plaintiffs' farm and isolated for a period of time in a corral with access to a 3-acre pasture. On June 10, 1972, H M Silver Domino 10 was turned into an 80-acre pasture with 32 of the plaintiffs' stock cows.

The bull covered the cow herd well, but in later weeks the plaintiffs noticed that the cows continued to recycle. On September 9, 1972, the plaintiffs complained to Melcher that the bull was unable to settle any of the cows. Melcher asked the plaintiffs to bring the bull to his ranch for a semen test. On September 27, 1972, the bull was given a field semen test. A veterinarian, Doctor Dierks, reported that the bull was capable of breeding, and Melcher asked the plaintiffs to try him for a longer time. Doctor Dierks recommended that the bull be rested for approximately 2 weeks before running him back in with the cow herd. Plaintiffs immediately turned the bull back in with the cows. They continued to be dissatisfied with the bull's performance, and on December 11, 1972, the bull was returned to Melcher.

Subsequently, at least three samples of the bull's semen were taken by Melcher and sent for analysis to Doctor Carroll of Colorado State University's Veterinary School. Samples of the semen were caught on January 29, March 22, and in May or June 1973. Doctor Carroll reported an abnormality rate in this sperm which was somewhat higher than that found in a normal healthy bull. He

stated that semen of the quality exhibited by H M Sliver Domino 10 fell in the "questionable" range and might be responsible for some reduction in fertility. He did state in exhibit 2 that he would not expect a problem in pasture breeding with 25 females, but there might be a reduction in conception rate with a heavier breeding load.

Tests conducted by Doctor Stevens, another veterinarian, on January 5, 1973, indicated that 17 of the plaintiffs' 32 cows had been impregnated. Orvel Torstenson testified that his cows birthed 14 calves from the bull. He estimated from birth records that these cows had been impregnated between September 16, 1972, and November 11, 1972. About January 10, 1973, a different bull was turned in with the cows. All but one of the remaining cows were settled thereafter in one cycle.

At trial, the defendant introduced evidence to the effect that 32 cows would be too many for a 2-year-old bull to cover, and that a reduction in fertility could result from overuse. Plaintiffs' evidence was that placing the bull with 32 cows would be within acceptable limits.

The issue at trial centered around the meaning to be attached to the term "breeder," contained in the catalogue warranty set out above. There was evidence that a normal bull should impregnate from 50 to 75 percent of the healthy cows he bred in each heat cycle, and that 95 percent of the cows should be settled within 3 months. There was also testimony that an animal settling 10 cows in a lifetime could technically be termed a "breeder."

Doctor D. K. Theophilus, a Norfolk, Nebraska, veterinarian, testified that with the sperm abnormalities exhibited by Doctor Carroll's tests, the bull "just would not be up to being a consistent breeder." Doctor Carroll, in his deposition testimony, stated that in his opinion the level of abnormal sperm in the bull did not create

the low level of impregnation in the cows, but that this low level could be the result of a number of other factors, including the ability of the cows to come into heat.

With reference to the catalogue warranty, Orvel Torstenson testified that the provision was standard in the Hereford industry, and that it was the only guarantee expected among people in the business. A field representative of the American Hereford Association testified that in his experience negotiations between buyer and seller concerning unsatisfactory bulls have always been under terms and conditions of warranties like the catalogue warranty. A director of the American Hereford Association testified that in the trade the catalogue warranty was the only warranty used.

Plaintiffs make essentially two assignments of error. First, the verdict and judgment are contrary to and not sustained by the evidence. Second, instruction No. 14, allowing the jury to find an exclusion of an implied warranty of fitness for breeding by trade usage, was erroneous. We examine the second assignment first. If the instruction used was prejudicially erroneous, the case must be reversed without need for an examination of the evidence.

Section 2-315, U. C. C., reads as follows: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the sellers' skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

Section 2-316(3)(c), U. C. C., provides: "an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade."

After explaining the implied warranty in an earlier instruction to the jury, the trial court gave contested instruction No. 14. It reads as follows: "The jury is instructed that under the facts in this case an implied warranty of fitness for breeding purposes may be ex-

cluded by the usage of the trade in question, and that before the jury shall consider whether or not the implied warranty of fitness stated in Instruction No. 13 is breached, the jury shall consider and determine whether or not the implied warranty of fitness has been excluded by the usage of the purebred hereford cattle trade. In the event the jury shall find the implied warranty of fitness has been excluded, then the jury shall disregard all instructions with regard to damages, for breach of the alleged and implied warranty of fitness for breeding purposes."

Plaintiffs contend that trade usage excluding the implied warranty of fitness was not properly presented by the pleadings or the evidence, so that any instruction allowing the jury to find the warranty excluded was erroneous.

The answer filed by the defendant in this case alleged: "That said written warranty is in accord with the custom and usage of the cattle trade in the community where the sale was made: That by custom (of) the trade in breeding animals there is no implied warranty of fitness for particular purpose in the case of sale of a bull."

Section 1-205(6), U. C. C., provides evidence of trade usage offered by a party is not admissible until the other parties have been given such notice as the court finds sufficient to prevent unfair surprise. We find defendant's answer herein was sufficient to put plaintiffs on notice of the defense of exclusion of implied warranty of fitness. The record does not disclose that plaintiffs were subjected to any unfair surprise. Pleading that a "custom (of) the trade" exists is not pleading a conclusion of law, as plaintiffs suggest.

We also find sufficient evidence in the record to support instruction No. 14. Orvel Torstenson testified the catalogue guarantee was the only warranty expected in the Hereford cattle business. The testimony of the field representative of the American Hereford Association

indicated that he had observed no other warranties in his extensive experience in the trade. This evidence is sufficient to submit the issue to the jury.

Ruskamp v. Hog Builders, Inc. (1974), 192 Neb. 168, 219 N. W. 2d 750, upon which plaintiffs rely, is distinguishable on its facts. There, plaintiffs purchased hogs under an implied warranty of fitness for breeding purposes. The hogs later developed a disease which destroyed their value for such purpose. The defendants sought to show that the scope of their warranty was limited to breeding and producing offspring and no warranties as to disease could be implied where the animals had been expressly warranted as having been vaccinated and tested for certain diseases. Defendants further sought to show that under the trade usage a hog guaranteed by the seller to be disease free would have a particular designation not given to the hogs in question. Ruskamp held: "The claim that a usage of the trade with respect to an SPF (specific pathogen free) hog modifies the provisions of the Code with respect to implied warranties is not supported by the evidence." In the present case there is ample evidence from which the jury could find a modification.

Plaintiffs also contend the evidence herein was insufficient to support the verdict and judgment. Their argument is essentially that the bull could not be found to be a "breeder" since in the cattle business a bull that settles roughly half of a 32-cow herd, as this one did, will not be considered acceptable. We believe the question of the bull's status as a "breeder" was properly submitted to the jury. In addition to the plaintiffs' evidence that 95 percent of their herd should have been settled, there was testimony that a bull which settles 50 percent of the healthy cows he breeds may be considered a "breeder." There was also a question as to whether the bull was turned in with too many cows. One of the experts, from a semen test, said he would not expect any problem in pasture breeding with 25 females. While

we may have some question on the result herein, the trial was held in a farm and ranch community. It was a question of fact for the jury. We are bound by its determination.

As we stated in Ridenour v. Kuker (1970), 185 Neb. 321, 175 N. W. 2d 287: "In determining the sufficiency of the evidence to sustain a judgment, every controverted fact must be resolved in favor of the successful party, and he must have the benefit of every inference that can reasonably be drawn from the evidence."

The standard of review is settled. "The verdict of a jury based upon conflicting evidence will not be set aside unless it is clearly wrong." Cook v. Nordahl (1974), 191 Neb. 424, 215 N. W. 2d 643. We cannot say that on these facts the jury was clearly wrong.

Plaintiffs direct our attention to the Uniform Commercial Code provisions dealing with warranty of merchantability. Section 2-314, U. C. C., provides in part as follows: "(1) Unless excluded or modified (section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * * (2) Goods to be merchantable must be at least such as * * * (c) are fit for the ordinary purposes for which such goods are used; * * *."

Plaintiffs in their brief argue the exclusion of an implied warranty of merchantability was not pleaded in the defendant's answer. Defendant's answer attempted to exclude implied warranties by limiting the transaction in the express warranty. It further specifically pled, by the custom of the trade in the community where the sale was made, there was no implied warranty of fitness for breeding purposes.

Plaintiffs' petition and proof were directed to an implied warranty of fitness for breeding purposes. The case was tried on that issue. The tendered instructions were directed to that issue. The objections at the instruction conference were confined to that issue. An

implied warranty of merchantability in the sale of a breeding bull is for all intents and purposes identical with a warranty of fitness for breeding purposes. If plaintiff felt there was a difference, this issue should have been clarified and presented.

In any event: "Alleged errors of the trial court in an action at law which are not referred to in a motion for a new trial will not be considered in this court." George Rose Sodding & Grading Co., Inc. v. City of Omaha (1973), 190 Neb. 12, 205 N. W. 2d 655.

The judgment of the District Court is affirmed.

AFFIRMED.