FREMONT NATIONAL BANK & TRUST COMPANY, CONSERVATOR OF THE ESTATE OF CLARA H. SHAFFER, APPELLANT, V. GENEVIEVE BEERBOHM, APPELLEE.

392 N.W.2d 767

Filed August 15, 1986.    No. 85-318.

Dennis E. Koley, for appellant.

Robert D. Moodie of Moodie & Moodie, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

As conservator of the estate of Clara H. Shaffer, appellant, Fremont National Bank & Trust Company, sued appellee, Genevieve Beerbohm, to set aside certain transfers of money and personalty as being the result of undue influence practiced by Beerbohm. The bank appeals the dismissal of its petition and assigns as errors to the district court its (1) finding that the bank failed to establish Shaffer was subject to undue influence; (2) finding that the evidence failed to establish Beerbohm

possessed a disposition to exert such influence; (3) failure to shift the burden of going forward with the proof to Beerbohm after the bank had met its burden; (4) sustainment of objections to certain cross-examination of Beerbohm; and (5) sustainment of an objection to the receipt into evidence of certain admissions made by Beerbohm. We affirm.

An action to set aside transfers of property on the basis they were made as the result of undue influence is one in equity and reviewable by this court de novo on the record. See, *Ford v. Jordan*, 220 Neb. 492, 370 N.W.2d 714 (1985); *McDonald v. McDonald*, 207 Neb. 217, 298 N.W.2d 136 (1980).

Thus reviewed, the evidence establishes that Clara Shaffer and her husband, John, produced no children, lived frugally, made no substantial gifts, and acquired substantial assets. When John Shaffer died in 1977 at the age of 88, Clara Shaffer became the owner of the couple's combined assets. The record does not tell us Clara Shaffer's precise age but reflects that at the time of trial she was "at least eighty."

After her husband's death, Clara Shaffer's physical condition, which had not been too good in any event, began to deteriorate, and she had difficulty moving about. As a consequence, she rarely left the house and relied on others to run errands for her. Beerbohm, who as a niece of Clara Shaffer had a close relationship with her dating back to Beerbohm's childhood, began helping Clara Shaffer by taking her shopping and to her doctor, doing her washing and cleaning, mowing her lawn, and generally running her errands. At first this was done on a weekly basis and later on a daily basis, until Clara Shaffer entered a nursing home in July of 1982 because a problem with her leg needed more attention than could be given at home.

Although her attorney considered Clara Shaffer competent after her husband's death, he nonetheless considered her to not have a good understanding of business matters and recordkeeping. Consequently, he suggested that she empower others to help her with respect to those matters. As a result, on February 17, 1978, Clara Shaffer designated William C. Hargens, the board chairman and president of the bank, and longtime friend, as her attorney in fact. As such, Hargens was empowered to make investments for her and to generally deal

with and manage her assets. At the same time, Clara Shaffer designated Beerbohm as her agent for the purposes of delivering to Hargens documents needing management, and to generally care for her aunt. The documents making these appointments authorized Hargens to reimburse Beerbohm for any expenses she might incur and to pay her for any services she rendered. Beerbohm then began to assist Clara Shaffer in the writing of checks to pay Clara Shaffer's bills and to direct the operation of one of Clara Shaffer's farms.

After Clara Shaffer entered the nursing home and some of her relatives complained that Beerbohm was wasting Clara Shaffer's assets, the bank, on November 22, 1982, was appointed conservator of Clara Shaffer's estate. In the course of inventorying the estate, the bank concluded that there was a discrepancy between the assets Clara Shaffer should have and those she did have.

Specifically, the bank contended that $82,843 could be traced through checks drawn on Clara Shaffer's account to Beerbohm's account or accounts owned by her children or husband. In addition, the bank contended that household furnishings, woodworking tools, and artifacts had been removed from Clara Shaffer's home.

Five thousand dollars of the amount traced to Beerbohm was accounted for by Beerbohm's share of gifts Clara Shaffer, at the suggestion of her attorney, had made to each of her nieces and nephews. Beerbohm testified that $20,000 of the amount traced to her account was paid to her by Clara Shaffer for services rendered through 1982, because Hargens had not paid her. According to Beerbohm, the balance was given willingly by Clara Shaffer.

The only evidence which suggests any connection between Beerbohm and the missing items of household furnishings and artifacts is that on September 25, 1981, she insured a storage barn for $1,500 and its furniture contents for $3,600. However, we are directed to no testimony that any of Clara Shaffer's household furnishings or artifacts, except possibly for a refrigerator, were seen in Beerbohm's possession.

While there is evidence that one of Beerbohm's sons lived rent free on a farm owned by Clara Shaffer, there is also

evidence that this was done at Clara Shaffer's request, as the property had been allowed to become rundown. Beerbohm's son was to, and did, clean the place up in lieu of paying rent.

As Montgomery Ward did not prepare tax returns or accept tax payments, the bank raised a question as to a $1,000 check to Montgomery Ward which reflected it had been issued in payment of taxes. Beerbohm explained that was an error and had actually been used to pay for cupboards which were hung in one of Clara Shaffer's properties. The bank also questioned payments to Victor's, Inc., "for farm machinery repair and things," because Clara Shaffer owned no farm machinery, although Beerbohm did. The record explains neither the purpose of these checks nor what "things" was intended to mean in describing Victor's range of services, although it is identified as an International Harvester dealer.

While there is medical testimony concerning Clara Shaffer's deteriorating physical condition, there is no medical testimony concerning her mental condition at any time.

The evidence does make clear that after Clara Shaffer entered the nursing home and shortly before the bank's appointment as her conservator, she was not competent to make business decisions. The record, however, does not inform us of her mental condition before she entered the nursing home.

The evidence does reflect, however, that Beerbohm called Clara Shaffer's attorney and advised him Clara Shaffer wished to change her will so as to name Beerbohm as the personal representative. The attorney advised Clara Shaffer he thought Beerbohm would need help with the financial management of the estate. As a consequence, on October 5, 1981, Clara Shaffer executed a codicil to her 1968 will, naming Beerbohm and Hargens as copersonal representatives. Thus, as of at least that day in 1981, Clara Shaffer's attorney was apparently of the opinion that she had the mental capacity to execute a will.

Undue influence sufficient to defeat a transfer of property is such manipulation as destroys the free agency of the transferor and substitutes another's purpose for that of the transferor. See, *In re Estate of Price, ante* p. 12, 388 N.W.2d 72 (1986); *Bishop v. Hotovy*, 222 Neb. 623, 385 N.W.2d 901 (1986). The elements which must be proved in order to vitiate a transfer of property

on the ground of undue influence are that (1) the transferor was subject to undue influence, (2) there was an opportunity to exercise such influence, (3) there was a disposition to exercise such influence, and (4) the transfer was clearly made as the result of such influence. See, *In re Estate of Price, supra*; *Bishop v. Hotovy, supra*. Moreover, in an equitable action the existence of undue influence must be proved by clear and convincing evidence. *In re Estate of Price, supra*.

While the circumstances are such that the bank was certainly justified in questioning Beerbohm's actions, application of the foregoing rules to the evidentiary record compels us to conclude that the practice of undue influence by Beerbohm was not proved.

Upon our de novo review we conclude, independently from the trial court, that the evidence falls short of clearly and convincingly establishing that Clara Shaffer was subject to undue influence for any appreciable period of time prior to the appointment of the bank as her conservator. Nor does the evidence clearly and convincingly show that Beerbohm possessed a disposition to exert such influence. There is no evidence that Beerbohm attempted to keep others from seeing and conversing with Clara Shaffer. Indeed, there is evidence that the husband of one of Clara Shaffer's other nieces saw Clara Shaffer five to six times a week, at least until she entered the nursing home, as he picked up and delivered her mail to her.

Although the basis of the bank's argument in connection with its third assignment of error, that somewhere during the course of the trial the burden of going forward with the proof shifted to Beerbohm, is not clear to us, the foregoing resolution of the first and second assignments of error makes such an inquiry unnecessary in any event.

The bank's fourth assignment of error rests on the fact that the trial court sustained objections to questions asking for explanations of certain checks drawn on Clara Shaffer's account. Beerbohm was first called as a witness by the bank. During this examination, she was questioned by the bank regarding the foregoing matters. Later, Beerbohm testified on her own behalf. During her examination in chief on this occasion, she testified that she helped Clara Shaffer write

checks and pay her bills. Nothing else was said during her direct testimony concerning this subject. When she was asked during cross-examination for explanations of specific checks, she objected.

Neb. Rev. Stat. § 27-611(2) (Reissue 1985) provides in pertinent part: "Cross-examination should be limited to the subject matter of the direct examination . . . . The judge may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." We have held that the extent, scope, and course of cross-examination rest within the discretion of the trial court, and the ruling of the trial court will not be disturbed in the absence of an abuse of that discretion. *Nixon v. Harkins*, 220 Neb. 286, 369 N.W.2d 625 (1985). Since the bank's questioning exceeded the scope of the direct examination in the sense that it dealt with Beerbohm's general relationship with Clara Shaffer while the cross-examination dealt with the specifics of particular financial transactions, it cannot be said that the trial court abused its discretion in sustaining the objection.

The bank's final assignment of error rests on the fact that the court would not permit it to read into evidence as admissions against her interest certain statements Beerbohm made in the course of a deposition taken in connection with the appointment of the bank as conservator. At that deposition Beerbohm stated, as the bank offered to prove, that she had sold some of Clara Shaffer's corn and received a check for over $300, which she used to buy clothes and groceries for Clara Shaffer and to pay cleaning bills.

It appears, although it is not entirely clear, that the bank's contention is that the statement was against Beerbohm's interest because she admitted cashing one of Clara Shaffer's checks. Just as in a de novo review on the record this court will not consider improperly admitted evidence, *In re Interest of S.S.L.*, 219 Neb. 911, 367 N.W.2d 710 (1985), it will consider improperly excluded evidence. Thus, we assume, but do not decide, that the bank's excluded offer of proof should have been admitted and so treat the matter. That bit of evidence, considered in light of the entire record, however, does not raise the evidence to the point that it clearly and convincingly proves

the elements of undue influence.

The judgment of the trial court being correct, it is affirmed.

AFFIRMED.