GARY COTTON, GUARDIAN AND CONSERVATOR OF THE ESTATE OF
JANICE LEA ELLIOTT, A PROTECTED PERSON, APPELLEE AND
CROSS-APPELLEE, V. RENEE ELLIOTT OSTROSKI, APPELLEE AND
CROSS-APPELLANT, ROBBIE ELLIOTT, ALSO KNOWN AS ROBERT R.
ELLIOTT III, A MINOR, APPELLANT, AND FIRST STATE BANK,
SCOTTSBLUFF, NEBRASKA, A CORPORATION, APPELLEE.

554 N.W.2d 130

Filed October 11, 1996.   No. S-94-937.

Randall L. Lippstreu, guardian ad litem, for appellant.

George A. Sommer for appellee Cotton.

Paul E. Hofmeister, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellee Ostroski.

WHITE, C.J., CAPORALE, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ., and RIST, D.J.

WRIGHT, J.

Robert R. Elliott III (Robbie) appeals the trial court's finding that Janice Lea Elliott lacked the requisite mental capacity to remove her name from a jointly held certificate of deposit and the trial court's order which reinstated Janice's name to the certificate of deposit. Renee Elliott Ostroski cross-appeals.

## SCOPE OF REVIEW

An action alleging lack of mental capacity to effect a change in the ownership of a jointly held certificate of deposit sounds in law and not in equity. As such, the trial court's factual findings will be upheld unless they are clearly wrong. See *Peterson v. Peterson*, 230 Neb. 479, 432 N.W.2d 231 (1988).

## FACTS

In 1968, Janice married Robert R. Elliott II. Two children were born to the marriage: Renee and Robbie. At the time of trial, Janice was 49 years old, Renee was 23, and Robbie was 18.

In 1982, Janice was diagnosed with multiple sclerosis. Janice and her husband separated in 1988, and in April 1989, she moved to Scottsbluff to live with her mother, Evelyn Cotton. The marriage was dissolved in 1990, and Janice received a lump-sum settlement from the divorce in the amount of $50,000.

On March 28, 1990, Janice invested $45,000 of the settlement in a time certificate of deposit with the First State Bank in Scottsbluff. Janice listed herself, Renee, and Robbie as joint owners of the certificate of deposit. Janice also held a savings certificate of deposit worth approximately $1,900 with First National Bank in North Platte. Apparently, Janice's sole sources of income from January 1992 until November 25, 1992, were the interest from these accounts, combined with her monthly Social Security disability benefits of approximately $947.

Janice's condition began to deteriorate significantly during the summer of 1992. In September, she hired a home health caregiver to provide her daily health care. Janice's relatives, including her mother and her brother, Gary Cotton, determined that Janice would soon need full-time care in a nursing facility. As a result, the relatives asked Renee and Robbie to come to Nebraska to observe their mother's condition and discuss her future care. Renee and Robbie came to Nebraska in November, stayed with Janice for 2 weeks, and left on November 26, 1992.

The day prior to their departure, Janice requested that Renee and Robbie take her to the First State Bank so that she could withdraw the funds from the $45,000 certificate of deposit. At the bank, Janice discussed her intentions with a bank employee. The bank employee informed Janice that she could not withdraw the money without incurring a significant penalty. When Janice told the bank employee that she simply wanted the money to go to her children, the bank employee suggested that she merely remove her name from the certificate of deposit. Janice agreed with this suggestion and formally removed her name from the certificate of deposit by signing the appropriate documents. The underlying funds were never withdrawn.

Subsequently, Gary was appointed guardian and conservator for Janice, and he made arrangements for her to enter a local nursing home in February 1993 where she would receive full-time care. He then filed an application for Janice to receive medicaid coverage for her nursing home costs. The Department of Social Services worker who was supervising

Janice's benefits became aware of the removal of Janice's name from the certificate of deposit and instructed Gary that in order for Janice to be eligible for full-time nursing home care benefits, Gary would be required to file an action for recovery of Janice's interest in the certificate of deposit. Gary then commenced the present action.

The trial court found that on November 25, 1992, Janice lacked the mental capacity necessary to remove her name from the certificate of deposit and ordered that Janice's ownership interest in the certificate of deposit be reinstated.

## ASSIGNMENTS OF ERROR

In his appeal, Robbie assigns the following errors: (1) The trial court erred in concluding that Janice lacked sufficient mental capacity on November 25, 1992, to remove her name from the jointly held certificate of deposit, and (2) the trial court erred in assessing costs against Robbie. Renee argues the same assignments of error in her cross-appeal.

## ANALYSIS

Initially, we must determine the appropriate standard of review. Renee and Robbie argue that the matter is equitable in nature and that the standard of review is de novo. In *Fremont Nat. Bank & Trust Co. v. Beerbohm*, 223 Neb. 657, 392 N.W.2d 767 (1986), we held that an action to set aside inter vivos transfers of property on the basis that they were made as the result of undue influence was one in equity and was reviewed by an appellate court de novo on the record. Similarly, in *Miller v. Westwood*, 238 Neb. 896, 472 N.W.2d 903 (1991), we held that an action to set aside a land contract on the basis of a lack of mental capacity was an action in equity.

Gary argues that a determination regarding whether Janice lacked the mental capacity to change the ownership of the joint certificate of deposit is an action at law and that the trial court's findings of fact should not be disturbed unless they are clearly wrong. We have never directly addressed whether an allegation of lack of mental capacity at the time of a change in ownership of a joint account such as a certificate of deposit sounds in law or in equity.

In *Peterson v. Peterson*, 230 Neb. 479, 432 N.W.2d 231 (1988), however, we addressed a similar issue. In *Peterson*, an elderly man had a close, long-term relationship with one of his nephews and had previously purchased three certificates of deposit in his and his nephew's name. The man fell, broke his hip, was hospitalized, and was eventually placed in a nursing home until he died. During his hospitalization, a second nephew stayed with the uncle and cared for him until he was placed in the nursing home.

While in the hospital, the uncle issued a power of attorney to the second nephew, giving him the power to manage the uncle's financial affairs, including implementing his wish that his assets be divided equally among his niece and nephews upon his death. The second nephew, while working on the uncle's affairs, came across the three certificates of deposit and reminded the uncle of his wish that his assets be divided equally. Subsequently, the uncle had the certificates modified so that they would be placed in his name only and added a provision in his will explaining his purpose for doing so. After the uncle's death, the first nephew filed an action alleging that the removal of his name from the certificates of deposit was the result of undue influence by the second nephew.

In *Peterson*, we noted two characteristics which led us to the conclusion that the action to set aside a modification of the names of the cotenants on a joint account sounds in law and not in equity. First, one who knowledgeably creates a joint account ordinarily does so with the present intent to employ the account's survivorship characteristics. The creation of the joint account does not amount to a present transfer of money from the depositor to the cotenant of the account. Rather, the transfer actually occurs at the death of the depositor. Until then, the cotenant may withdraw funds the depositor has placed in the account, but remains liable for any amounts withdrawn until the transfer actually occurs on the death of the depositor. Second, the depositor of a joint account may change his or her mind regarding the disposition of the moneys in the account at any time prior to his or her death.

In view of these two characteristics, we concluded that the creation of a joint account such as a certificate of deposit was

more like a testamentary devise than an outright gift. Therefore, we held that an action alleging undue influence regarding a change in the ownership of a joint account sounds in law and not in equity. As such, the trial court's factual findings will be upheld unless they are clearly wrong.

Actions which allege that one of the owners of a joint account removed his or her name from the account on the basis of undue influence or that the owner's removal was ineffective because the owner lacked mental capacity at the time of the change reflect similar concerns regarding the modification of joint accounts. The creation and management of a jointly held certificate of deposit are more analogous to actions with respect to a testamentary document than to an inter vivos gift. As a result, we extend our conclusion in *Peterson* to govern our review of actions to set aside modifications of joint accounts for lack of mental capacity. Therefore, in the instant case, the factual findings of the trial court will not be disturbed unless they are clearly wrong.

Next, we address the argument raised by Renee and Robbie that the trial court improperly held in favor of Gary on a theory of recovery that was not sufficiently raised by the pleadings—Janice's lack of mental capacity. Renee and Robbie argue that the only cause of action alleged in the petition was that Janice was subjected to undue influence. For the reasons set forth below, we find that the trial court properly considered the issue of Janice's lack of mental capacity at the time she removed her name from the certificate of deposit. Two items are informative for deciding this issue: (1) the allegations set forth in the petition and, most notably in this case, (2) the order regarding the pretrial conference.

The petition alleged that after Janice purchased the certificate of deposit, her condition steadily worsened both physically and mentally until sometime prior to the fall of 1992, when her condition deteriorated so much that she was unable to conduct her own business affairs and lacked the mental capacity to manage her business affairs.

In *Christianson v. Educational Serv. Unit No. 16*, 243 Neb. 553, 501 N.W.2d 281 (1993), we explained that a pleading has two purposes: (1) to eliminate from consideration contentions

which have no legal significance and (2) to guide the parties and the court in the conduct of cases. "The purpose of pleadings is to frame the issues upon which a cause is to be tried and advise the adversary as to what he must meet." *Bashus v. Turner*, 218 Neb. 17, 21, 352 N.W.2d 161, 165 (1984).

A petition is sufficient if, under the facts alleged, the law entitles a plaintiff to recover. Facts are sufficient to constitute a cause of action when they are a narrative of the events, acts, and things done or omitted which shows a legal liability of the defendant to the plaintiff. See *Gibb v. Citicorp Mortgage, Inc.*, 246 Neb. 355, 518 N.W.2d 910 (1994). Here, the petition clearly alleges that Janice lacked the mental capacity to manage her business affairs, including, presumably, the capacity to sign away a $45,000 asset.

Moreover, the issue of Janice's mental capacity is emphasized in the pretrial order. On June 8, 1994, the trial court filed a pretrial order directing the parties and their attorneys to sign, file, and serve the following papers by 3 working days before the pretrial conference:

> (1) The witness list shall contain the name, address, telephone number and a numbered list of points the witness will establish. . . .
>
> . . . .
>
> (3) The statement of elements shall be a numbered list of the ultimate facts made essential by law to establish each claim or defense that the party has pleaded.

In compliance with this pretrial order, Gary's statement of elements stated that he intended to establish (1) Janice's mental capacity and (2) the fact that Janice's decision to remove her name from the certificate of deposit was motivated by Renee's undue influence. In addition, Gary listed Dr. Terry M. Himes as a witness. Gary stated that Himes would testify to, inter alia, Janice's physical and mental condition, and Himes' opinion as to Janice's mental capacity. The issues set out in a pretrial order supplant those raised in the pleadings. *Engelhaupt v. Village of Butte*, 248 Neb. 827, 539 N.W.2d 430 (1995); *Malerbi v. Central Reserve Life*, 225 Neb. 543, 407 N.W.2d 157 (1987). The purpose of a pretrial conference is to simplify the issues, to amend pleadings when necessary, and

to avoid unnecessary proof of facts at trial. To that end, litigants must adhere to the spirit of the procedure and are bound by the pretrial order to which no exception has been taken. *Cockrell v. Garton*, 244 Neb. 359, 507 N.W.2d 38 (1993). In view of the pretrial order, Renee and Robbie cannot argue that they did not have notice that lack of mental capacity would be an issue in this case.

We find that the petition states sufficient facts to establish that Gary was entitled to recover under the theory of lack of mental capacity as pled. The petition and the pretrial order sufficiently advised Renee and Robbie of the issues that would be presented at trial and were sufficient to support the theory of recovery upon which the trial court entered judgment for Gary.

We next address the issue of lack of mental capacity. In order to set aside an instrument for lack of mental capacity on the part of the person executing such instrument, the burden of proof is upon the party so asserting to establish that the mind of the person executing the instrument was so weak or unbalanced when the instrument was executed that the person could not understand or comprehend the purport and effect of what he or she was doing. *Miller v. Westwood*, 238 Neb. 896, 472 N.W.2d 903 (1991); *Wurst v. Blue River Bank*, 235 Neb. 197, 454 N.W.2d 665 (1990). In an action to set aside an instrument on the basis of incapacity or undue influence, the plaintiff has the burden of establishing the elements of those theories by clear and convincing evidence. See *Miller v. Westwood, supra*. Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *Records v. Christensen*, 246 Neb. 912, 524 N.W.2d 757 (1994).

In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Kreus v. Stiles Service Ctr., ante* p. 526, 550 N.W.2d 320 (1996). In reviewing a judgment awarded in a bench trial, an appellate court does not reweigh the evidence, but considers the judgment in a light most favorable to the successful party and resolves evi-

dentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Bristol v. Rasmussen*, 249 Neb. 854, 547 N.W.2d 120 (1996).

Therefore, the remaining issue is whether the trial court's determination that Gary demonstrated by clear and convincing evidence that Janice lacked the requisite mental capacity to remove her name from the certificate of deposit was clearly erroneous. Our review of the testimony presented at trial demonstrates the evidentiary basis for the trial court's conclusion.

Himes, a board-certified neurologist and Janice's treating physician since 1988, testified that from 1988 to 1992, Janice's condition had relentlessly deteriorated in virtually all aspects of her functioning, including her intellectual capacity. Himes testified based on his knowledge and observation of Janice that on November 25, 1992, Janice was "intelligently impaired at that time. It was also my opinion that she was sufficiently impaired at that time that she was not competent to make significant financial decisions on her own behalf." Himes testified he was concerned that Janice had demonstrated a lack of judgment in her decisionmaking regarding her illness and her medical needs.

Janice's mother, Evelyn, with whom Janice lived from April 1989 to February 1993, testified extensively regarding her observations of Janice's mental awareness and functioning. Evelyn testified that as early as 1989, Janice's intellectual capacities were erratic. Sometimes they were normal, and on other occasions, she was incoherent. Evelyn's testimony suggests that during the time Janice lived with her, Janice's mind deteriorated to such an extent that Janice had no comprehension of her financial condition. Evelyn testified that Janice did not keep track of her personal checks as she signed them. Evelyn recalled that when Janice's bank statement arrived, Janice "would spend — oh, almost a half a day trying to figure it out, and she would never get her checkbook figured out at all." When Janice's checks eventually began to bounce, Janice was shocked and stated, " 'I am not out of money. I got plenty of money.' "

Evelyn testified that sometime prior to October 1992, Janice lost her ability to add and subtract. In addition, although Janice had a calculator, she could not use it. Evelyn testified that Janice "just couldn't comprehend enough figures, I mean, she just could not figure anything out." Evelyn stated that when Janice received bills from doctors, she could not understand them. At times, Janice would demand that Evelyn cash her benefit checks. She would then resist paying her bills, saying, " 'It is my money.' " Just prior to the time when Renee and Robbie visited Janice in November 1992, Janice told Evelyn, " 'Well, I don't owe any more bills. I just don't owe any more bills. The way I got it figured out the doctors are starting to pay me now.' "

The evidence regarding Janice's comprehension of the removal of her name from the certificate of deposit is in conflict. Bank employees testified that in their view, Janice appeared to understand the significance of her action and appeared to be aware and coherent when she signed the necessary documents. However, there is a significant amount of evidence which suggests that Janice did not comprehend the significance or the effect of removing her name from the certificate of deposit. Some of the evidence demonstrated that after Janice removed her name from the certificate of deposit, she believed that she would retain control over it until her death and believed that the money was accessible to meet her needs. For example, after removing her name from the certificate of deposit, Janice purchased a motorized wheelchair which cost nearly $9,400. Approximately $3,000 of the cost of the chair was paid by medicaid, and Janice was responsible for the difference. Janice testified that she purchased the wheelchair on credit, believing that she had enough money to pay for it using the surplus money she had in her Social Security checks and the money that she received from her ex-husband, that is, the funds placed in the certificate of deposit.

Although Renee and Robbie provided alternative explanations concerning the evidence, there was sufficient evidence upon which the trial court could conclude that Janice lacked the mental capacity on November 25, 1992, to remove her

name from the certificate of deposit. Therefore, we cannot say that the trial court's determination was clearly erroneous.

Finally, Renee and Robbie argue that the trial court erred in assessing the costs of the action against Robbie, because Robbie is a minor. This assigned error was not raised in Renee's or Robbie's motions for new trial, and therefore, we will not address it on appeal. Alleged errors by the trial court in an action at law which are not referred to in a motion for new trial will not be considered on appeal. *Scudder v. Haug*, 201 Neb. 107, 266 N.W.2d 232 (1978); *Torstenson v. Melcher*, 195 Neb. 764, 241 N.W.2d 103 (1976).

The judgment of the district court is affirmed.

AFFIRMED.

FAHRNBRUCH, J., not participating.