WILLIAM L. ZIMMERMAN, APPELLEE AND CROSS-APPELLANT, V. DOUGLAS R. MARTINDALE, APPELLANT AND CROSS-APPELLEE.

377 N.W.2d 94

Filed December 6, 1985.   No. 84-497.

Richard A. Douglas of Winner, Nichols, Douglas and Kelly, for appellant.

Robert G. Simmons, Jr., of Wright, Simmons & Selzer, for appellee.

KRIVOSHA, C.J., HASTINGS, and SHANAHAN, JJ., and BRODKEY, J., Retired, and OTTE, D.J.

KRIVOSHA, C.J.

This action was originally instituted by the appellee, William L. Zimmerman, for the purpose of dissolving a partnership known as Midwest Blaze-King (Midwest), pursuant to Neb. Rev. Stat. § 67-337 (Reissue 1981). The record discloses that Midwest was formed and operated pursuant to an oral agreement entered into between William Zimmerman and Douglas R. Martindale without compliance with the provisions of Neb. Rev. Stat. § 67-101 (Reissue 1981). Under the provisions of this oral agreement, the parties were to split profits and expenses equally. The partnership operated pursuant to this agreement during the years 1979 to 1983, when it was dissolved.

Following trial to the district court for Scotts Bluff County, Nebraska, a decree was entered dissolving the partnership and distributing the assets of the partnership. In doing so the district court found that one of the assets owned by the partnership was a certain license agreement contributed by Zimmerman to the partnership. The district court found that Zimmerman should receive credit in his capital account for one-half of the license agreement, in the sum of $50,000. It is this $50,000 which is the principal dispute in this appeal. For reasons more particularly hereinafter set out, we believe that the district court was in error in its finding regarding the license agreement.

The basis upon which the district court found as it did with regard to the license agreement was apparently an agreement entered into earlier between Zimmerman and Martindale and

dated January 1, 1980 (exhibit 1). By the terms of that agreement Zimmerman represented that he was the owner of a certain license agreement with Woodcutter's Manufacturing, Inc., an Oregon corporation. The second paragraph of the agreement provided as follows: "ZIMMERMAN is *willing* to sell a 50% interest in such license agreement to MARTINDALE for the sum of $50,000.00 to be paid *under terms and conditions to be agreed upon at some future period of time*." (Emphasis supplied.) The agreement then provided that the parties were to form a corporation, with each owning 50 percent of the stock, and that Martindale was to put $10,000 into a bank account as an act of good faith. The agreement concluded by providing:

5. Should ZIMMERMAN and MARTINDALE be unable to reach an agreement with regards to the Corporation then each party shall retain as follows:

A. ZIMMERMAN shall retain the License Franchise Agreement of which MARTINDALE shall make no claim of interest to.

B. MARTINDALE shall be returned all sums of money immediately so advanced to the future Corporation or to ZIMMERMAN himself.

The evidence is without dispute that no corporation was ever formed and none came into existence. Had nothing more occurred, a solution to this case would be relatively simple. Paragraph 5 of exhibit 1 clearly set out how the matter was to be resolved. Zimmerman would receive back the license, and Martindale would receive back his money. If this occurred, presumably each party would have gone his own way and that would have been the end of the matter. Unfortunately, however, although the parties did not form a corporation and fulfill the terms of exhibit 1, they did, nevertheless, form a partnership and proceed to conduct business as a partnership and not as a corporation.

The record further discloses that though exhibit 1 recited that Zimmerman was the owner of a certain license agreement, in fact when exhibit 1 was signed he was not. And it was not until after the partnership agreement had been formed that the partnership, and not Zimmerman, purchased the franchise agreement from Woodcutter's Manufacturing, Inc., for the

total sum of $20,000. Payment of this $20,000 was made by Martindale's contribution of an automobile having a value of $15,000 and Zimmerman's contribution of an automobile having a value of $5,000. Woodcutter's was willing to accept these automobiles as payment for the license.

Zimmerman argues that the decision of the district court was correct because Martindale agreed to purchase a one-half interest for $50,000, regardless of what its actual cost may have been. He urges us to recognize that the very essence of the American free enterprise system is "Buy low and sell high," and, in view of the fact that Martindale agreed to pay $50,000 for the license, he must abide by that agreement. If we were able to hold that exhibit 1 was an enforceable contract, then, perhaps, Zimmerman's contentions would be correct. We believe, however, that such is not the case. Rather, we believe that the most that can be said of exhibit 1 is that it was a contract to enter into a contract. The language does not provide that Zimmerman sells to Martindale a 50-percent interest for the sum of $50,000 or that Martindale buys the interest for $50,000, but only recites that Zimmerman "is willing to sell a 50% interest" for $50,000 "under terms and conditions to be agreed upon at some future period of time." Those future conditions were never agreed to. Nor were any of the other conditions of exhibit 1 regarding the formation of the corporation ever fulfilled. Nor does exhibit 1 recite that Martindale is willing to buy the interest.

We have previously held that a contract is not formed if the parties contemplate that something remains to be done to establish contractual arrangements or if elements are left for future arrangements. See, *Rybin Investment Co., Inc. v. Wade*, 210 Neb. 707, 316 N.W.2d 744 (1982); *O'Brien v. Fricke*, 148 Neb. 369, 27 N.W.2d 403 (1947). When an agreement not covered by the Uniform Commercial Code stipulates that certain terms shall be settled later by the parties, such terms do not become binding unless and until they are settled by later agreement. In *Rybin Investment Co., Inc. v. Wade, supra* at 709-10, 316 N.W.2d at 746, we said:

> To establish an express contract, there must be shown what amounts to a definite proposal and an unconditional

and absolute acceptance thereof. [Citations omitted.]

Further, in order that a binding contract may result from an offer and acceptance, it is essential that the minds of the parties meet at every point, and that nothing be left open for a future arrangement.

It is clear that had Zimmerman sought specific performance of the contract he would not have been successful under the terms of exhibit 1 and the facts as they existed at the time the agreement was signed. The most that can be said of exhibit 1 is that the parties elected not to form a corporation and proceeded under paragraph 5 of exhibit 1. After that the parties proceeded to enter into a new arrangement, to wit, a partnership agreement in which each party was to be an equal partner. The license, as the record clearly establishes, was purchased by the partnership for $20,000, of which Martindale contributed $15,000 and Zimmerman $5,000. Exhibit 1 was not binding on Martindale, and he was not obligated to pay Zimmerman $50,000 for a one-half interest in a license which had already been purchased by the partnership. The trial court therefore erred in adding $50,000 to Zimmerman's partnership capital account.

The appellee, Zimmerman, has filed a cross-appeal in which he maintains that the district court erred in not ordering Martindale to pay to the partnership interest on $67,043.50 from June 18 to December 16, 1983. The record discloses that after the sale of the partnership, Martindale obtained possession of a check in the amount of $67,043.50, representing part payment. These were moneys that properly belonged to the partnership and, if placed in the partnership account, could have earned interest. The evidence discloses that if the $67,043.50 had been in fact placed in an interest-bearing account, the interest on the amount would have been $2,756.31. This amount should be considered to be an asset of the partnership and Martindale should be required to pay that sum into the partnership for division in the appropriate dissolution of the partnership.

A second item adjusted by the court involves some alleged home improvements in the amount of $2,880.30. An examination of the record, however, discloses no evidence to

support that contention. As a matter of fact, during the course of the trial, the district court advised the parties that there was no evidence to support that adjustment and that, absent such evidence, the amount could not be considered. Apparently, in preparing the decree, however, the amount found its way into the accounting. It should have been disregarded.

The last item, amounting to $1,809.64, has to do with the withdrawal of two motor vehicles. There is no evidence to support any contention except that withdrawal of the vehicles was considered by each of the parties to be equal, and therefore the capital entries should be adjusted to show equal withdrawals by the parties for the motor vehicles.

For these reasons the judgment of the district court is affirmed as modified and the cause remanded to the district court for adjustments in accordance with this opinion.

AFFIRMED AS MODIFIED.