FOUR R CATTLE COMPANY AND DENNIS R. JULCH, APPELLANTS, V. JERRY MULLINS AND DORETA MULLINS, APPELLEES.

570 N.W.2d 813

Filed September 26, 1997.   No. S-95-179.

134

James E. Bachman for appellants.

William T. Ginsburg, of Zuber & Ginsburg, for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.

Four R Cattle Company (Four R), a Nebraska partnership, and Dennis R. Julch filed an action at law against Jerry Mullins and Doreta Mullins for fraud, conversion, and conspiracy to defraud for activities arising out of Jerry Mullins' livestock-

dealing business. Jerry Mullins confessed judgment in full, and the action proceeded against his wife, Doreta Mullins, only. The district court, in a bench trial, found by a preponderance of the evidence that Four R and Julch had failed to prove that Doreta Mullins participated in a scheme to defraud, and, accordingly, the court entered judgment in favor of Doreta Mullins and dismissed the case against her. Four R and Julch timely appealed. We removed this case to our docket under our authority to regulate the dockets of the Nebraska Court of Appeals and this court, and we now affirm the judgment of the district court.

## FACTUAL BACKGROUND

Jerry Mullins did business as C & J Cattle Company (C & J) as a bonded order buyer and livestock dealer. From December 1990 through June 1991, Four R and Julch purchased 502 head of cattle through Jerry Mullins. Four R and Julch paid $280,285.95 for the cattle, $7,000 in processing charges, and $29,040 in pasture rent. All checks and wire transfers were made payable to Jerry Mullins. During this time, Jerry Mullins became involved in the commodities trading market and sold some of the cattle belonging to Four R and Julch to cover his losses. Of the 502 head of cattle, only 240 head were delivered to Four R and Julch. In early 1992, Four R and Julch made oral demand for the remaining 262 head of cattle, but Jerry Mullins was unable to comply with the demand, resulting in damages of $165,094.42.

During the period from December 1990 through June 1991, Doreta Mullins prepared C & J invoices based on information given to her by her husband. The checks and wire transfers from Four R and Julch were made out to Jerry Mullins and contained no reference to Doreta Mullins. When Jerry Mullins was unavailable, Doreta Mullins engaged in telephone conversations with Four R and Julch representatives regarding the price per head of the cattle, the weight of the cattle, processing costs, and pasture rent. In addition, Doreta Mullins wrote checks for the purchase of cattle and the payment of expenses as directed by Jerry Mullins.

The funds for the purchase of the cattle were deposited in the Mullins' joint checking account, over which both Jerry Mullins

and Doreta Mullins had check-signing authority. Jerry Mullins covered his futures losses with checks from this account. Doreta Mullins balanced the checkbook for this account. On the date that Doreta Mullins balanced the May 1991 statement, she calculated that there were certain outstanding checks not yet charged to the account that resulted in a negative balance of $4,602.98, even though the bank statement revealed a balance of $9,181.76 as of May 31, 1991. During the period in question, four checks from this account, totaling $78,490.30, were initially returned for insufficient or uncollected funds but were eventually paid by the bank during the same month upon subsequent presentment. At trial, Doreta Mullins testified that she did not recall discussing these four checks with Jerry Mullins; she believed that they occurred in the normal course of the cattle-buying business when Jerry Mullins wrote a check to the sale barn and the check was presented to their bank prior to the time that his customers paid him.

Jerry Mullins testified that he did not discuss the problems regarding the cattle with Doreta Mullins until approximately 30 minutes prior to the meeting at which he informed Four R and Julch that the cattle were not available for delivery.

## SCOPE OF REVIEW

The burden of proof in fraudulent misrepresentation actions at law is proof by a preponderance of the evidence. *Citizens Nat. Bank of Wisner v. Kennedy & Coe*, 232 Neb. 477, 441 N.W.2d 180 (1989); *Bock v. Bank of Bellevue*, 230 Neb. 908, 434 N.W.2d 310 (1989). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Richardson v. Mast*, 252 Neb. 114, 560 N.W.2d 488 (1997).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Spencer v. Omaha Pub. Sch. Dist.*, 252 Neb. 750, 566 N.W.2d 757 (1997); *Kindred v. City of Omaha Emp. Ret. Sys.*, 252 Neb. 658, 564 N.W.2d 592 (1997).

## ASSIGNMENTS OF ERROR

Four R and Julch assert that the trial court erred in (1) applying the wrong legal standard regarding a party's duty to dis-

cover fraud, (2) finding that Doreta Mullins did not know and should not have known of the fraud, and (3) failing to find that Doreta Mullins conspired with her husband to commit fraud.

## ANALYSIS
In their third amended petition, Four R and Julch alleged that Jerry Mullins and Doreta Mullins engaged in a fraud or conspiracy, or a combination of the two, which resulted in damages to Four R and Julch. Four R and Julch also alleged a conversion theory of recovery, but they have neither argued nor assigned any error regarding their conversion theory; thus, the conversion theory of recovery will not be discussed.

### FRAUDULENT MISREPRESENTATION
We have consistently stated that in order to maintain an action for fraudulent misrepresentation, the plaintiff must allege and prove the following elements: (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that the plaintiff should rely upon it; (5) that the plaintiff reasonably did so rely; and (6) that he or she suffered damage as a result. *Evergreen Farms v. First Nat. Bank & Trust*, 250 Neb. 860, 553 N.W.2d 728 (1996); *Schuelke v. Wilson*, 250 Neb. 334, 549 N.W.2d 176 (1996); *Gibb v. Citicorp Mortgage, Inc.*, 246 Neb. 355, 518 N.W.2d 910 (1994).

The marital relationship itself is not sufficient to render one spouse liable for the fraudulent actions of the other. See, e.g., *Dodson v. Anderson*, 710 S.W.2d 510 (Tenn. 1986). Therefore, each element of fraudulent misrepresentation must be proved specifically as to Doreta Mullins. The record is devoid of any direct evidence that Doreta Mullins knew of Jerry Mullins' fraudulent scheme, but Four R and Julch assert that there was sufficient circumstantial evidence for the trial court to find that Doreta Mullins not only knew of Jerry Mullins' fraudulent scheme, but also participated in defrauding them.

In a fraud case, direct evidence is not essential, but proof of fraud drawn from circumstantial evidence must not be guesswork or conjecture; such proof must be rational and logical

deductions from the facts and circumstances from which they are inferred. *Schuelke v. Wilson, supra.*

The instant case involves the third of the six elements of fraudulent misrepresentation. At issue is whether Doreta Mullins made representations regarding the cattle to Four R and Julch knowing them to be false or made the representations recklessly without knowledge of their truth and as positive assertions. An intent to deceive is not an indispensable element of a cause of action for fraud based on misrepresentation of a material fact. *Dammann v. Litty,* 234 Neb. 664, 452 N.W.2d 522 (1990). A party may be liable for misrepresentation when a representation was false when made and the party knew that it was false or made it recklessly and without knowledge of its truth or falsity. *Schatz v. Vidlak,* 229 Neb. 4, 424 N.W.2d 613 (1988).

The circumstantial evidence that Four R and Julch urge in support of their theory that Doreta Mullins knew and participated in Jerry Mullins' fraudulent scheme is as follows: (1) Doreta Mullins, in the course of her work at C & J, prepared C & J invoices and gave information over the telephone to customers, such as the weight of cattle, processing costs, pasture rent, et cetera—all based on information provided to her by Jerry Mullins; (2) Doreta Mullins reconciled the personal checkbook, and Four R and Julch's money was deposited into the Mullins' personal checking account; (3) bills were paid out of the personal checking account, and when Doreta Mullins reconciled the May 1991 statement by calculating outstanding checks not yet charged to the account, the account had a negative balance of $4,602.98; and (4) during the period in question, four large checks from this personal checking account were initially returned for insufficient or uncollected funds.

In that regard, the trial court found that there was no evidence indicating that Doreta Mullins knew of Jerry Mullins' activities in the futures market. There was no evidence that Jerry Mullins was evasive regarding finances, nor did evidence exist of lavish or unusual spending patterns that would tip off Doreta Mullins to that fact that Jerry Mullins possessed ill-gotten money or was carrying on a fraud. Thus, the trial court found credible Doreta Mullins' testimony that she was a mere spokesperson at C & J when Jerry Mullins was not available and that information she

provided to the customers, such as the weight of cattle, processing costs, and pasture rent, was based on information provided to her by Jerry Mullins. Furthermore, with regard to Doreta Mullins' involvement in the business, the trial court believed Doreta Mullins' testimony that Jerry Mullins basically told her what to do and say and that she had no knowledge of what happened to the money or the cattle that are the subject of the instant case.

With reference to the four large insufficient or uncollected funds checks, Doreta Mullins testified that these particular checks were for ordinary business expenses and that these occurrences did not cause her to be concerned or to question Jerry Mullins. Doreta Mullins testified that these events were expected in the course of Jerry Mullins' business and were likely due to the timing of his payments to the cattle sale barn and his clients' payments to him. These four checks were paid by the Mullins' bank during the same month upon subsequent presentment to the bank. Likewise, the trial court concluded that Doreta Mullins' own calculation while she was reconciling the May 1991 bank statement of a negative balance of $4,602.98 in the middle of a monthly banking cycle did not, in and of itself, raise a "red flag" that a fraud was occurring with respect to the Four R and Julch cattle.

In a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *In re Estate of Disney*, 250 Neb. 703, 550 N.W.2d 919 (1996); *Nelson v. Metropolitan Utilities Dist.*, 249 Neb. 956, 547 N.W.2d 133 (1996). When reviewing a judgment awarded in a bench trial, an appellate court does not reweigh the evidence, but considers the judgment in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Cotton v. Ostroski*, 250 Neb. 911, 554 N.W.2d 130 (1996); *Bristol v. Rasmussen*, 249 Neb. 854, 547 N.W.2d 120 (1996). In viewing the evidence and making every reasonable inference deducible from the evidence in favor of Doreta Mullins, we conclude that it was not clearly wrong for the district court to find that (1) Doreta Mullins made no state-

ments or representations that were known to her to be false or in reckless disregard of the truth and (2) Doreta Mullins had not participated with Jerry Mullins in a scheme to defraud Four R and Julch.

At the trial court level and again on appeal, Four R and Julch suggest that Nebraska state courts should employ the series of factors considered by federal courts in income tax cases to determine whether a legitimate "innocent spouse" defense exists in fraudulent misrepresentation cases. However, the "innocent spouse" defense is a statutory defense for spouses who are relieved of liability for understatements of income on federal joint tax returns where the spouse "did not know, and had no reason to know" of a substantial understatement of tax on the return. I.R.C. § 6013(e) (1994). We have not adopted an "innocent spouse" defense to claims of fraudulent misrepresentation in Nebraska, and we decline to do so now. As the instant case demonstrates, the present elements of fraudulent misrepresentation are sufficient for a determination of whether a spouse, or other person, is liable for statements or representations that are known to be false or made recklessly without knowledge of the truth of the statements or representations.

### CONSPIRACY

Next, Four R and Julch assert that the district court erred in failing to find that Doreta Mullins conspired with Jerry Mullins to commit fraud. A civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means. *Koster v. P & P Enters.*, 248 Neb. 759, 539 N.W.2d 274 (1995); *Wiekhorst Bros. Excav. & Equip. v. Ludewig*, 247 Neb. 547, 529 N.W.2d 33 (1995).

Civil conspiracy need not be established by direct evidence of acts charged, but may, and generally must, be proved by a number of indefinite acts, conditions, and circumstances which vary according to the purpose to be accomplished. *Koster v. P & P Enters., supra.* However, it is necessary to prove the existence of at least an implied agreement, to establish conspiracy. *Steed v. Oak Ridge Equestrian Ctr.*, 224 Neb. 792, 401 N.W.2d 495 (1987).

Having determined that the district court was not clearly wrong when it found no evidence indicating that Doreta Mullins knew of Jerry Mullins' fraudulent activities or that she made fraudulent statements or representations to Four R and Julch, we conclude for identical reasons that the district court was not clearly wrong in finding that Doreta Mullins did not participate with Jerry Mullins, either explicitly or implicitly, in a conspiracy to defraud Four R and Julch.

## CONCLUSION

For the foregoing reasons, we conclude that each of the assigned errors of Four R and Julch lacks merit, and we affirm the judgment of the district court.

AFFIRMED.