WESLEY TRACY, APPELLEE AND CROSS-APPELLANT, V. LLOYD TRACY, DOING BUSINESS AS TRACY ENTERPRISES, APPELLANT AND CROSS-APPELLEE.
RICHARD TRACY, APPELLEE AND CROSS-APPELLANT, V. LLOYD TRACY, DOING BUSINESS AS TRACY ENTERPRISES, APPELLANT AND CROSS-APPELLEE.

581 N.W. 2d 96

Filed June 9, 1998.    Nos. A-97-189, A-97-190.

Earl D. Ahlschwede, of Mayer, Burns & Ahlschwede, for appellant.

Michael J. Murphy, of Angle, Murphy, Valentino & Campbell, P.C., for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and IRWIN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Wesley Tracy and Richard Tracy each filed a lawsuit in the district court for York County in which each claimed that Lloyd Tracy, doing business as Tracy Enterprises, owed him money for services rendered. After a bench trial on the consolidated cases, the district court entered judgments in favor of Wesley in

the amount of $15,288 and in favor of Richard in the amount of $1,992. Lloyd appeals the judgments. Wesley and Richard cross-appeal. For the reasons stated below, we affirm in part, and in part, we reverse, and remand.

## II. FACTUAL BACKGROUND

Tracy Enterprises is a garbage collection business solely owned by Lloyd. Prior to April 1992, Tracy Enterprises collected garbage mainly in York County and the surrounding area.

Lloyd's twin brother, Wesley, also had a garbage collection business which he operated in Hebron, Nebraska. In 1991, Wesley sold his business to The Garbage Company. Wesley remained employed with The Garbage Company until March 1, 1992. Beginning on March 16, Wesley began working full time for Lloyd. He also did business as Tracy Disposal doing odd jobs.

In April 1992, Tracy Enterprises began to collect garbage in Fillmore and Thayer Counties, which is the general area where Wesley operated his business before he sold it. The parties refer to this expansion as the "south route." Lloyd and Wesley agreed that Wesley would service the south route. At trial, the brothers disagreed whether it was Lloyd's or Wesley's idea to start the south route.

From March 16 until approximately October 16, 1992, Wesley worked for Lloyd. He collected garbage, performed mechanical work on Lloyd's equipment, and provided welding services. Wesley testified that he worked 6 days per week for a total of 1,960 hours. Wesley testified as to the hours he worked and the type of work performed. Wesley also provided his opinion as to the value of his services.

Richard, who is Wesley's son and Lloyd's nephew, was in high school during 1992. He claimed that he also worked for Lloyd from March 16 to approximately October 16, 1992. According to Richard and Wesley, Richard helped Wesley on the south route on Saturdays and before school on Tuesdays during the school year and helped Wesley daily in the summer months. According to Richard and Wesley, Lloyd was aware that Richard was helping Wesley with the south route and had authorized it. Richard testified that at times, Lloyd would tell

him not to work on the route anymore because of concerns regarding child labor violations. However, according to Richard, Lloyd would then tell him to continue working. Richard testified that he worked for Lloyd approximately 380 hours. Richard testified as to the value of his services. Lloyd testified that Richard's only job was to deliver dumpsters and that Lloyd had told Wesley and Richard that Richard was not to collect garbage.

The testimony was as follows regarding compensation: Lloyd had paid Wesley and Richard in the past for their services. In the past, Wesley and Lloyd had also traded services. Wesley testified that he had numerous conversations with Lloyd after March 16, 1992, regarding wages for the work performed from March 16 to October 16. According to Wesley, Lloyd told him that "he would just take care of us." Wesley understood this to mean that Lloyd would pay them. Wesley admitted that at one point after March 16 Lloyd told him that Lloyd could not pay him $100 per day as he had in the past.

According to Lloyd's evidence, he and Wesley agreed that Lloyd would provide the equipment and cover the expenses for the south route, that Wesley would service the south route, and that Wesley could purchase the route at any time from Lloyd by purchasing the equipment. Lloyd testified that Wesley's compensation for servicing the route was that he could use Lloyd's equipment at no cost to do cleanups and other intermittent work and keep all money earned as a result.

After making demand for payment, Wesley and Richard each initiated a lawsuit against Lloyd. Wesley sought recovery based alternatively on the principle of quantum meruit or under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (1988 & Supp. III 1991). Richard sought recovery based on the principle of quantum meruit. Both sought additional damages under the Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 et seq. (Reissue 1988 & Cum. Supp. 1992). Lloyd generally denied the allegations in the petitions and alleged that there was no agreement for payment.

The cases were consolidated for trial. The trial commenced on September 8, 1995, before Judge Bryce Bartu. The trial continued on November 13, 1996, before Judge Michael Owens, at

which time the parties stipulated that the bill of exceptions from September 8, 1995, be submitted to the court. Additional evidence was also received.

Based on the evidence, the district court concluded that there was no dispute that a substantial amount of work was performed by Wesley and Richard on Lloyd's behalf and that given the nature of the work performed, Wesley and Richard had rebutted the presumption that the services were provided gratuitously. The district court further concluded that the principle of quantum meruit required that Lloyd pay the reasonable value of the services provided, that the reasonable value of the services provided by Wesley was $15,288, and that the reasonable value of the services provided by Richard was $1,992. The district court also held that the Fair Labor Standards Act did not apply in Wesley's case and the Wage Payment and Collection Act did not apply in either case because Wesley and Richard were not "employee[s]" as contemplated by the acts. The court entered judgment accordingly. This appeal timely followed.

### III. ASSIGNMENTS OF ERROR

Lloyd assigns and argues that the district court erred in concluding that Richard and Wesley were entitled to recovery based on the principle of quantum meruit, that Richard and Wesley had rebutted a presumption that they had provided their services gratuitously, and that damages were sufficiently proved.

Richard and Wesley cross-appeal, claiming that the district court erred in not applying the Wage Payment and Collection Act.

### IV. ANALYSIS

#### 1. STANDARD OF REVIEW

The theory of quantum meruit is premised on the existence of a contract implied by law. *Tobin v. Flynn & Larsen Implement Co.*, 220 Neb. 259, 369 N.W.2d 96 (1985). An action sounding in contract is an action at law. *Bachman v. Easy Parking of America*, 252 Neb. 325, 562 N.W.2d 369 (1997); *Nebraska Pub. Emp. v. City of Omaha*, 247 Neb. 468, 528 N.W.2d 297 (1995). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Bachman, supra.*

In a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Four R Cattle Co. v. Mullins*, 253 Neb. 133, 570 N.W.2d 813 (1997); *In re Estate of Disney*, 250 Neb. 703, 550 N.W.2d 919 (1996). When reviewing a judgment awarded in a bench trial, an appellate court does not reweigh the evidence, but considers the judgment in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Four R Cattle Co., supra*; *Cotton v. Ostroski*, 250 Neb. 911, 554 N.W.2d 130 (1996).

## 2. QUANTUM MERUIT

Lloyd contends that Wesley and Richard were not entitled to recover based on the principle of quantum meruit. Lloyd argues that Wesley and Richard did not prove they had a reasonable expectation of payment.

Initially, we note that the evidence does not support a conclusion that the parties had an express contract which would preclude recovery based on a quantum meruit theory of recovery. See *Associated Wrecking v. Wiekhorst Bros.*, 228 Neb. 764, 424 N.W.2d 343 (1988) (holding that law implies contract only when parties have not entered express agreement). In order for an express contract to result, there must be, among other things, a meeting of the minds at every point with nothing left open for future arrangement. *Professional Recruiters v. Oliver*, 235 Neb. 508, 456 N.W.2d 103 (1990); *Zimmerman v. Martindale*, 221 Neb. 344, 377 N.W.2d 94 (1985). According to the evidence, there was not a meeting of the minds between the parties regarding whether Lloyd would pay for the services or the manner of any such payment.

Generally, the principle of quantum meruit is a contract implied in law theory of recovery based on the equitable doctrine that one will not be allowed to profit or enrich oneself unjustly at the expense of another. *Associated Wrecking, supra*. The issue of unjust enrichment is a question of fact. See *Professional Recruiters, supra*.

Where benefits have been received and retained under circumstances that it would be inequitable and unconscionable

to permit the party receiving them to avoid payment therefor, the law requires the recipient to pay the reasonable value of the services. *Id*. To give rise to an implied contract to pay, the services must have been rendered in expectation that the other party would pay. In turn, the other party must have accepted the services with knowledge of that expectation. See 66 Am. Jur. 2d *Restitution and Implied Contracts* § 20 (1973). See, also, *County of York v. Johnson*, 230 Neb. 403, 432 N.W.2d 215 (1988).

The evidence is conflicting regarding whether Wesley and Richard could reasonably expect payment for their services. According to Wesley and Richard, they expected to be paid for their services because they had been paid in the past. In addition, Wesley testified that Lloyd told him that Lloyd "would take care of" them, which he understood to mean that Lloyd would pay them. Lloyd argues that any expectation of payment was unreasonable because he told Wesley he could not pay them. However, the record shows that Lloyd told Wesley only that he could not pay Wesley $100 per day.

Based on the parties' past conduct, the type and amount of work performed, and Lloyd's statement as testified to by Wesley, the evidence supports the district court's conclusions that Wesley and Richard had a reasonable expectation of payment and that Lloyd accepted services with knowledge of their expectation. Under the circumstances, we cannot conclude that the district court was clearly wrong in finding (1) that Wesley and Richard furnished services to Lloyd and (2) that it would be inequitable and unconscionable to permit Lloyd to retain the benefit of the services without paying the reasonable value therefor.

### 3. Presumption of Gratuitous Service

Lloyd also argues that Wesley and Richard did not rebut the presumption that services rendered to family members are performed gratuitously. The general rule is that a promise to pay for services rendered by one member of a family and accepted by another member of a family will not be implied from the mere rendition of services. If a family relationship exists between them, there is a presumption that the services were rendered gratuitously. See, 42 C.J.S. *Implied Contracts* § 32 (1991); 66 Am. Jur. 2d *Restitution and Implied Contracts* § 30 (1973); Annot., 7 A.L.R.2d 8 (1949). See, also, *Plath v.*

*Brunken,* 102 Neb. 467, 167 N.W. 567 (1918). Although in Nebraska jurisprudence it appears that the above rule has generally been applied where a family member has provided services to another family member who died before any payment was made, see, e.g., *In re Estate of Krueger,* 235 Neb. 518, 455 N.W.2d 809 (1990), the rule has a broader application.

However, in *Krueger, supra,* the Nebraska Supreme Court held that cases holding that a claimant performed services gratuitously are distinguishable from cases where the services performed are "of a business nature, which services are not usually performed without remuneration, whereas the cases disallowing claims involved personal, household, or domestic services for which a close relative is not normally compensated." 235 Neb. at 524, 455 N.W.2d 813-14.

The holding in *Krueger* is applicable to the case before us. The services performed by Wesley and Richard included garbage collection, welding, and mechanical work benefiting Lloyd's garbage collection business. These services were clearly of a business nature and of the type not usually performed without payment. Therefore, we conclude that the district court did not err in determining that the presumption of gratuitous service had been rebutted by the evidence presented.

## 4. DAMAGES

Finally, Lloyd contends that Wesley and Richard did not sufficiently prove their damages. He argues that the records kept by Wesley were inadequate and that Lloyd's evidence contradicted Wesley's and Richard's evidence regarding the amount of time worked and the services provided.

An action based on quantum meruit for labor and materials provided is grounded on an implied promise to pay the reasonable value thereof. *Krueger, supra.* There is no specific standard by which the reasonable value of labor and materials furnished shall be proved. The trier of fact may consider all reasonable inferences of value that flow from the evidence adduced. *Id.; Bosle v. Luebs,* 169 Neb. 186, 98 N.W.2d 795 (1959). A judgment based on quantum meruit will not be reversed unless clearly wrong. See *Krueger, supra.*

We cannot conclude that the district court was clearly wrong in awarding $15,288 to Wesley and $1,992 to Richard. At trial, Wesley and Richard presented evidence regarding the amount and type of work they performed for Lloyd from March 16 to October 16, 1992. Wesley and Richard also presented evidence regarding the reasonable value of such services. Lloyd presented evidence challenging the amount of work performed. Resolution of the conflicts in the evidence was for the trier of fact. See *Four R Cattle Co. v. Mullins*, 253 Neb. 133, 570 N.W.2d 813 (1997). This argument is without merit.

### 5. CROSS-APPEAL

For their cross-appeals, Wesley and Richard contend that the district court erred in concluding that the Wage Payment and Collection Act did not apply because they were not employees as contemplated under the act. Wesley and Richard argue that the above act is applicable in this case because they are employees and the amount due is wages, as the terms are defined in the act. As a result, they argue that they are entitled to an award of attorney fees pursuant to § 48-1231 and "a penalty of two times the [amount of the unpaid] wages" for willful conduct pursuant to § 48-1232.

Section 48-1231 provides that an employee having a claim for wages that have been unpaid for 30 days may institute a lawsuit. If such an employee secures judgment on a claim for wages, the employee is entitled to recover the full amount of the judgment, costs, and an attorney fee, if the employee has employed an attorney, that shall not be less than 25 percent of the unpaid wages. *Id.* Section 48-1232 further provides that if the nonpayment of wages is willful, an amount equal to two times the amount of unpaid wages shall be recovered from the employer. However, the penalty provided in § 48-1232 is placed in a fund to be distributed to the common schools of the state; it is not an award to the employee. We also note that the award of the penalty set forth in § 48-1232 is discretionary and that this discretion should be exercised only when there is no reasonable dispute as to the fact that the wages are owed or as to the amount of the wages. See *Suess v. Lee Sapp Leasing*, 229 Neb. 755, 428 N.W.2d 899 (1988).

Section 48-1229 defines an employee as "any individual permitted to work by an employer pursuant to an employment relationship . . . ." Subsection 2 of § 48-1229 provides that an employment relationship exists unless

> (a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his or her contract of service and in fact, (b) such service is either outside the usual course of business for which such service is performed or such service is performed outside of all the places of business of the enterprise for which such service is performed, and (c) such individual is customarily engaged in an independently established trade, occupation, profession, or business. This subdivision is not intended to be a codification of the common law and shall be considered complete as written.

In addition, this statute defines wages to mean compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, fee, commission, or other basis. § 48-1229(4).

Based upon our review of the record and the broad language of the statute, we conclude that the district court erred in finding that Wesley and Richard were not employees under the above act. The record shows that Wesley and Richard were permitted by Lloyd to work. In addition, the evidence does not establish that Wesley and Richard were free from the control or direction of Lloyd, that their services were outside the usual course of Lloyd's business, or that they were customarily engaged in an independently established business, as would be required to overcome the presumption of an employment relationship set forth in § 48-1229(2). We note that the definition of wages set forth in § 48-1229(4) encompasses wages awarded on the principle of quantum meruit in that it states that the amount of wages may be determined on a "time, task, fee, commission, or *other basis*." (Emphasis supplied.) For these reasons, we reverse the district court's determination that the Wage Payment and Collection Act did not apply. We remand the case for determinations of the appropriate attorney fees to be assessed and whether a penalty of two times the unpaid wages should be assessed.

## V. CONCLUSION

For the reasons stated above, we affirm in part, and in part we reverse, and remand.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.