FOLGERS ARCHITECTS LIMITED, ASSIGNEE OF
FOLGERS ARCHITECTS & FACILITY DESIGN, INC.,
A DELAWARE CORPORATION, APPELLEE AND
CROSS-APPELLANT, V. RICHARD A. KERNS ET AL.,
APPELLANTS AND CROSS-APPELLEES.
612 N.W.2d 539

Filed June 27, 2000. Nos. A-98-1326, A-98-1327, A-98-1328.

P. Shawn McCann, of Sodoro, Daly & Sodoro, for appellants.

Gregory C. Scaglione, of Koley, Jessen, Daubman & Rupiper, P.C., for appellee.

SIEVERS and INBODY, Judges, and BUCKLEY, District Judge, Retired.

INBODY, Judge.

## I. INTRODUCTION

Folgers Architects Limited (FAL), assignee of Folgers Architects & Facility Design, Inc. (FAFD), a Delaware corporation, brought an action against the defendants to collect unpaid architectural fees, reimbursable expenses, and termination fees relating to several apartment construction projects. FAL asserted causes of action under theories of breach of oral and written contracts, promissory estoppel, and quantum meruit. The district court for Douglas County entered judgment in favor of FAL against the defendants. This timely appeal followed.

## II. STATEMENT OF FACTS

### 1. FACTUAL BACKGROUND

Sometime in late 1992 or early 1993, Jeffrey Anderzhon, an architect with Anderzhon Architects, Inc. (AAI), first met with Richard A. Kerns, to discuss the possibility of AAI's providing architectural services for the development of several apartment complexes. Weekly meetings were held to discuss the development of the apartment complexes and were attended by Anderzhon; Kerns; Gene Wilczewski, a developer; and Larry Hagewood, an engineer.

During the meetings, Kerns and Anderzhon came to a verbal agreement that Anderzhon would provide architectural services for apartment construction projects being developed. The apartment projects were known as Thornberry, Burwick, Walton Heath, Ashberry, Sussex Place, Greely, Wingpoint, Devonshire, Reno, and Kennamare. It was agreed that the design of the apartment projects would be based on two other apartment projects that Anderzhon had designed and that the fees for the architectural services would be on a per unit basis. It was further agreed that Anderzhon would be paid a $5,000 initial startup fee for each project and that Anderzhon would issue invoices for his services as the architectural services progressed.

Anderzhon and Kerns further agreed that as each apartment project progressed, a written form contract prepared by the American Institute of Architects, known in the industry as a B181 contract, would be executed in compliance with requirements of Housing and Urban Development (HUD). HUD required that a B181 contract be executed for all projects that sought HUD coinsurance for the private financing of multiple-unit dwellings.

In March 1993, Anderzhon began the architectural services for the apartment projects. On February 1, 1994, Anderzhon and Kerns executed a B181 contract for the Burwick project. The contract was entered into by Burwick Apartments, Ltd., as the owner and AAI as the architect. The contract outlined among other things the architect's services and responsibilities, the administration of the contract, the owner's responsibilities, the construction cost, payments to the architect, ownership and use of documents, termination of the agreement, and the basis of compensation.

In July 1994, AAI merged its operation with FAFD. However, Anderzhon kept the accounts receivable for the work AAI had performed on these projects prior to July 1994. All services provided by Anderzhon and FAFD after July 1994 were billed by FAFD. The evidence further shows that Anderzhon informed Kerns that his practice had merged with FAFD and that all future work relating to the apartment projects would be performed and billed by FAFD. FAFD, along with Anderzhon, continued to provide architectural services for the apartment projects. The evidence shows that Kerns made no objection to FAFD performing the architectural design work or billing for the services provided and reimbursable expenses incurred.

On November 1, 1994, Anderzhon and Kerns executed a B181 contract for the Walton Heath project. The contract was executed by Walton Heath Apartments, Ltd., as the owner and FAFD as the architect.

As each project began, Anderzhon would set up a billing system for the project. As architectural services were provided on a particular project, invoices were issued to Kerns. The invoices reflected the percentage of the work that had been completed on the project, the amount due, and the amount of the reimbursable

expenses due. Kerns then issued checks for the payment of the invoices from checking accounts that were set up for each project.

Apparently, Kerns felt that the apartment projects were over budget, and he was having difficulty raising enough capital to cover all of the apartment construction projects. So, Kerns notified Anderzhon and FAFD that none of the apartment projects would be completed and that no additional architectural fees or reimbursable expenses associated with the apartment projects would be paid. Anderzhon and FAFD made several demands to Kerns for payment of the architectural fees due, and Kerns responded that he was "tapped out."

On May 5, 1995, Anderzhon sent Kerns a letter of termination, notifying Kerns that FAFD was terminating its services on the apartment projects because of Kerns' failure to proceed with the projects. On May 17, FAFD's legal counsel also sent Kerns a demand letter for the payment of the outstanding accounts receivable owed on the projects. No further payments were made on the projects.

In late 1995, 1996, and 1997, FAFD filed lawsuits against Kerns; Burwick Apartments, Ltd.; Thornberry Apartments, Inc.; Sussex Place Apartments, Inc.; Ashberry Apartments, Inc.; and Walton Heath Apartments, Inc., for breach of oral and written contracts relating to the nonpayment of the accounts receivable relating to the architectural work performed on the apartment projects. These suits were later consolidated for trial.

On or about May 1, 1997, Anderzhon resigned his position with FAFD. At the time Anderzhon resigned, he assigned to FAFD the accounts receivable of AAI for architectural services provided on the apartment projects prior to July 1994.

In August 1997, FAFD discontinued its operations because of financial difficulties. At this time, FAFD assigned its accounts receivable to JLK, "an assignment entity." These receivables included the receivables related to the apartment projects at issue.

Subsequently, Ken Folgers, the former president of FAFD, formed FAL, an Illinois corporation. FAL then repurchased the accounts receivable previously assigned by FAFD to JLK. The receivables repurchased by FAL included the receivables at issue in this case.

The record reflects that the trial court allowed FAFD to amend the petitions to identify FAL as the assignee of FAFD and also granted the defendants leave to further plead or stand on their prior answers.

Trial on this matter was held before the Douglas County District Court without a jury on August 13, 14, and 27, 1998. Although several witnesses testified, for purposes of our review, we need only summarize the testimony of Anderzhon and Kerns below.

## 2. TESTIMONY OF ANDERZHON

Anderzhon testified that in late 1992 or early 1993, he and Kerns entered into a verbal agreement that Anderzhon would provide architectural services in connection with the construction of several apartment complexes being developed by Kerns.

Anderzhon described the type and the amount of work that he performed on each apartment project. The work performed on the apartment projects was broken down into several phases, and each phase was assigned a percentage of completion: the design phase, the construction document phase, the bid and negotiation phase, and the construction phase. When work was completed in one phase, Anderzhon would issue invoices to Kerns for the amount due on the projects. Anderzhon also offered into evidence the invoices that he had issued to Kerns on the projects. The invoices reflected the amounts due on the project, the expenses incurred by Anderzhon's performing the work, and the amounts Kerns had paid.

Anderzhon testified Kerns had verbally agreed to pay for the architectural services performed on the apartment projects and assured Anderzhon that Kerns was putting together other investors and that he would see that the outstanding invoices for the architectural services were paid.

## 3. TESTIMONY OF KERNS

Kerns testified that in 1993 and 1994, he met with Anderzhon to discuss the prospect of Anderzhon's providing architectural services for several apartment projects. Kerns claimed that he was not in charge of the apartment projects, that he was not responsible for making decisions on the projects, that he had

minimal contact with Anderzhon, that he never personally directed Anderzhon to do anything with respect to the apartment construction projects, and that he was only responsible for arranging investors and providing the "seed money" needed to get the apartment projects started. Kerns contended that Wilczewski was actually in charge of putting together the projects and the team who worked on the projects.

Kerns further testified that Anderzhon was to provide architectural services on the apartment projects, but that Anderzhon was only entitled to be paid the $5,000 retainer and the reimbursable expenses he incurred. Kerns further claimed that Anderzhon was not entitled to be paid anything beyond the retainer and reimbursable expenses unless the apartment projects received final approval from HUD and the projects proceeded to closing. However, Kerns admitted on cross-examination that Anderzhon had been paid for a portion of the architectural services he performed and that Anderzhon had been paid more than the amount due for the retainer and reimbursable expenses on some of the projects.

Kerns testified that he never told Anderzhon that he would be personally responsible and that he never signed a personal guarantee for the payment of Anderzhon's architectural fees. However, Kerns admitted on cross-examination that the B181 contracts provided that if the projects were terminated prior to final approval from HUD, the architectural fees accrued up to the point of termination would be due.

Kerns further admitted on cross-examination that he had used the architectural plans prepared by Anderzhon as his own personal property, that he had displayed the architectural plans at a Christmas party he held for potential investors, and that he listed the architectural plans as a contribution of personal property in exchange for an interest in the limited partnerships.

### 4. Procedural Background

At the conclusion of FAL's case and prior to resting, FAL sought leave to file a consolidated petition to conform the pleadings with the evidence presented. The trial court granted FAL's request. In addition, the defendants requested and the court granted their request that they be allowed to reserve any objec-

tions they might have to the consolidated petition until after the petition was filed.

On August 27, 1998, FAL filed a consolidated petition, naming the following additional defendants: Burwick Apartments, Inc.; Thornberry Apartments, Ltd.; Sussex Place Apartments, Ltd.; Ashberry Apartments, Ltd.; and Walton Heath Apartments, Ltd. Hereinafter, these are referred to as the "newly added defendants."

On September 8, 1998, the original defendants filed an answer to the consolidated petition. On the same day, the newly added defendants filed a special appearance objecting to the jurisdiction of the court over them for the reasons that no sufficient and proper service of summons had been served upon them. Following a hearing, on September 16, the trial court overruled the special appearances.

On November 12, 1998, the trial court entered judgment in favor of FAL in varying amounts for all of the apartment projects with the exception of the Devonshire and Kennamare projects. In its order, the court determined (1) that FAL had satisfied its burden of proving enforceable written contracts between Anderzhon and Kerns; Burwick Apartments, Inc.; Burwick Apartments, Ltd.; Walton Heath Apartments, Inc.; and Walton Heath Apartments, Ltd., and that FAL was entitled to recover damages on its causes of action for breach of the written contracts, promissory estoppel, and quantum meruit; (2) that FAL established that there were enforceable oral contracts between Anderzhon and Thornberry Apartments, Inc.; Thornberry Apartments, Ltd.; Ashberry Apartments, Inc.; Ashberry Apartments, Ltd.; Sussex Place Apartments, Inc.; and Sussex Place Apartments, Ltd., and that FAL was entitled to recover damages on its causes of action for breach of the oral contracts, promissory estoppel, and quantum meruit; (3) that FAL satisfied its burden of proving that Kerns breached his verbal promise to pay the $5,000 architect fee for the Greely, Wingpoint, and either Ashberry or Kennamare projects and that FAL was entitled to recover the $5,000 for these three projects; and (4) that FAL was entitled to prejudgment interest at the rate of 12 percent on all of the projects except for the Burwick and Walton Heath projects. With regard to the credibility of the witnesses,

the court stated that the testimony of "Anderzhon was credible and his recollection was reliable." However, the court found the recall of Kerns, Wilczewski, and Hagewood "was not reliable."

On November 30, 1998, the original defendants filed a motion for a new trial, which was overruled by the trial court on December 10. This timely appeal followed.

## III. ASSIGNMENTS OF ERROR

On appeal, the defendants contend, summarized and restated, that the district court erred in (1) overruling the special appearance of the newly added defendants; (2) allowing FAL, an assignee, to pursue its claim for damages relating to the B181 contracts when the contracts contained an anti-assignment provision; (3) finding that FAL was entitled to recover on the B181 contracts even though the Burwick and Walton Heath projects did not receive final approval from HUD; (4) finding Kerns liable for the judgments entered against Burwick and Walton Heath on the B181 contracts; (5) finding that the parties had an oral contract for the Ashberry, Sussex Place, Kennamare, Devonshire, Reno, and Greely projects; (6) finding that FAL was entitled to recover on the basis of promissory estoppel; (7) finding that FAL was also entitled to recover on the theory of quantum merit; and (8) awarding FAL prejudgment interest.

On cross-appeal, FAL alleges that the district court erred (1) in failing to find Kerns jointly and severally liable for judgment awarded for the Thornberry, Ashberry, Sussex Place, Greely, Wingpoint, and Kennamare projects; (2) in failing to award prejudgment interest at the rate of 18 percent on the Burwick and Walton Heath projects rather than the 12 percent actually awarded; and (3) failing to award postjudgment interest in the amount of 18 percent on the remaining projects.

## IV. STANDARD OF REVIEW

A suit brought to recover damages for breach of contract is an action at law. *Buckingham v. Wray*, 219 Neb. 807, 366 N.W.2d 753 (1985). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. See *Buckingham, supra.*

■ In a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Four R Cattle Co. v. Mullins*, 253 Neb. 133, 570 N.W.2d 813 (1997); *In re Estate of Disney*, 250 Neb. 703, 550 N.W.2d 919 (1996). When reviewing a judgment awarded in a bench trial, an appellate court does not reweigh the evidence, but considers the judgment in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Four R Cattle Co., supra*; *Cotton v. Ostroski*, 250 Neb. 911, 554 N.W.2d 130 (1996); *Tracy v. Tracy*, 7 Neb. App. 143, 581 N.W.2d 96 (1998).

## V. DISCUSSION

### 1. SPECIAL APPEARANCE

■ The newly added defendants contend that the district court erred in overruling their special appearance for the reason that no sufficient and proper service of summons had been served upon them. In the instant case, the evidence in support of this assigned error was not preserved in the bill of exceptions. Absent a complete bill of exceptions, the only issue before the court on appeal is whether the pleadings are sufficient to support the judgment. *Latenser v. Intercessors of the Lamb, Inc.*, 245 Neb. 337, 513 N.W.2d 281 (1994). If the pleadings are sufficient to support the judgment, it will be presumed on appeal that the evidence supports the trial court's orders and judgment. See, *Snyder v. Nelson*, 213 Neb. 605, 331 N.W.2d 252 (1983); *T. S. McShane Co., Inc. v. Dominion Constr. Co.*, 203 Neb. 318, 278 N.W.2d 596 (1979); *Wendt v. Yant Construction Co.*, 125 Neb. 277, 249 N.W. 599 (1933); *Gaines v. Warrick*, 113 Neb. 235, 202 N.W. 866 (1925).

From our review of the pleadings, it is apparent that no service of a summons was made upon the newly added defendants as required by Neb. Rev. Stat. § 25-503.01 (Reissue 1995). In addition, FAL admitted during oral argument before this court that no summons was issued and served upon the newly added defendants. Thus, the pleadings are insufficient to support the judgment of the district court with respect to the newly added defendants, and we find that the district court erred in overrul-

ing the newly added defendants' special appearance and entering judgment against them. Accordingly, we vacate the order of judgment entered against Burwick Apartments, Inc.; Thornberry Apartments, Ltd.; Sussex Place Apartments, Ltd.; Ashberry Apartments, Ltd.; and Walton Heath Apartments, Ltd.

## 2. WRITTEN CONTRACTS

Because several of the errors assigned in this appeal relate to the Burwick and Walton Heath B181 contracts, we will address these errors in this section.

### (a) Anti-Assignment Provision

First, the defendants contend that the district court erred in allowing FAL, an assignee, to recover on the Burwick and Walton Heath B181 contracts because the contracts, by their terms, were not assignable. Specifically, the defendants contend that both contracts contained anti-assignment provisions which prohibited assignment without the written consent of the other party and that no consent was given by the defendants.

The Burwick and Walton Heath contracts provide in article 8.3:

The Owner and the Architect, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such party with respect to all covenants of this Agreement. *Neither the Owner nor the Architect shall assign, sublet or transfer any interest in this Agreement without the written consent of the other.*

(Emphasis supplied.)

We have not been cited to, nor has our independent research uncovered, any Nebraska cases dealing with the specific issue raised here; however, there are numerous cases from other jurisdictions which hold that a contractual provision prohibiting assignment of rights under a contract, unless a different intention is manifested, does not forbid assignment of a right to money damages for a breach of the contract. *Ford v. Robertson,* 739 S.W.2d 3 (Tenn. App. 1987); *Cordis Corp. v. Sonics International,* 427 So. 2d 782 (Fla. App. 1983); *Grady v. Commers Interiors, Inc.,* 268 N.W.2d 823 (S.D. 1978); *Fuller v. Favorite Theaters Co. of Salt Lake,* 119 Utah 570, 230 P.2d 335

(1951); *Trubowitch v. Riverbank Canning Co.*, 30 Cal. 2d 335, 182 P.2d 182 (1947); Restatement (Second) of Contracts § 322 (1981). We now hold that a contractual provision prohibiting assignment of rights under a contract, unless a different intention is manifested, does not forbid assignment of a right to money damages for a breach of the contract.

In the instant case, the anti-assignment provision at issue does not manifest a different intention. Further, the evidence reflects that the Burwick and Walton Heath B181 contracts were breached on or about May 12, 1995. The assignments which the defendants complain of occurred in May and August 1997, after the contracts at issue were breached. Because the assignments took place after the Burwick and Walton Heath contracts had been breached and after a right to money damages for the breach had accrued, we find that the anti-assignment provisions in the Burwick and Walton Heath contracts did not prevent the assignments from AAI to FAFD and from FAFD to JLK. Consequently, we find that the assignment provision at issue did not prevent FAL, the assignee, from pursuing its claim, and this assigned error is without merit.

### (b) Final Approval

Next, the defendants contend that the district court erred in allowing FAL to recover on the Burwick and Walton Heath B181 contracts because neither project received final approval from HUD and therefore the defendants were not responsible for any payments other than the retainer fee and reimbursable expenses which had already been paid.

In its order, the district court determined that the defendants' refusal or failure to proceed to closing on the Burwick and Walton Heath projects triggered article 7 of the B181 contracts and that pursuant to this article, Anderzhon was entitled to be compensated for his services.

Article 7 provides in pertinent part:

> **7.1** This Agreement may be terminated by either party upon seven days' written notice should the other party fail substantially to perform in accordance with its terms through no fault of the party initiating the termination.
>
> . . . .

**7.3** *In the event of termination not the fault of the Architect, the Architect shall be compensated for all services performed to termination date, together with Reimbursable Expenses then due and all Termination Expenses as defined in Paragraph 7.4.*

**7.4** Termination Expenses include expenses directly attributable to termination for which the Architect is not otherwise compensated, plus an amount computed as a percentage of the total compensation earned to the time of termination, as follows:

.**1** 20 percent if termination occurs during the Design Phase, or

.**2** 10 percent if termination occurs during the Construction Documents Phase, or

.**3** 5 percent if termination occurs during any subsequent phase.

The evidence in the record supports the district court's finding that the defendants failed to proceed with the Burwick and Walton Heath projects, that the defendants informed Anderzhon that they did not intend to proceed with these projects, and that through no fault of Anderzhon, the projects were terminated. Accordingly, we cannot say that the district court was clearly wrong in finding that pursuant to article 7, the defendants were responsible for the payment of the architectural services, the reimbursable expenses, and the termination expenses, despite the fact that neither project received HUD approval.

### (c) Individual Liability of Kerns for Walton Heath and Burwick Obligations

Next, Kerns contends that the district court erred in finding him personally liable for judgments entered relating to the Burwick and Walton Heath B181 contracts. Kerns contends that when he executed the Burwick and Walton Heath contracts, he did so as an officer of Walton Heath Apartments, Inc., and as a limited partner of Burwick Apartments, Ltd., and that therefore, he should not have been held personally liable under the contracts. The district court determined that when Kerns executed the contracts, he bound himself personally as a partner and as a legal representative of the owner of the projects. First, we will

address whether the court erred in finding Kerns individually liable for corporate obligations.

### · (i) Individual Liability for Corporate Obligations

Kerns contends that he should not be individually liable for the obligations of Walton Heath Apartments, Inc., because he executed the B181 contracts in his capacity as president of Walton Heath Apartments, Inc.

██ Generally, a corporation is viewed as a complete and separate legal entity from its shareholders and officers, who are not, as a rule, liable for the debts and obligations of the corporation. *ServiceMaster Indus. v. J.R.L. Enterprises*, 223 Neb. 39, 388 N.W.2d 83 (1986). Further, a corporation's directors or officers are not ordinarily liable to the corporation's creditors or third persons for corporate acts or debts simply by reason of an official relation with the corporation. *Hecker v. Ravenna Bank*, 237 Neb. 810, 468 N.W.2d 88 (1991).

██ As a general rule, concerning liability on a corporate contract, a corporation's directors or officers are in the same position as agents of private individuals and are not personally liable on a corporation's contract unless the corporate directors or officers purport to bind themselves, or have otherwise bound themselves, to performance of the contract. *Id.* Where a person acting as the agent of a corporation makes a contract on its behalf, which is binding upon it, his acts in that behalf, in the absence of fraud, create no individual or personal liability against him. *Savorelli v. Stone*, 168 Neb. 419, 96 N.W.2d 222 (1959).

In the instant case, Kerns executed and signed the Walton Heath B181 contract in his official capacity as president of the corporation. Further, the contract reflects that it was entered into on behalf of the Walton Heath corporation as the owner. There is no evidence to support a finding that Kerns bound himself individually. In fact, the evidence shows that Kerns never signed any guaranties to bind him personally and that Anderzhon admitted that Kerns never told him that he would be personally responsible for the corporation's obligations. Further, there is no evidence to support a finding that Kerns committed fraud by his actions as a corporate president. Accordingly, we find that this is not an appropriate case to disregard the corporate fiction and

hold Kerns liable in his individual capacity for corporate obligations. Therefore, we find that the trial court erred in finding Kerns liable in his official capacity as the president of Walton Heath Apartments, Inc.

### (ii) Individual Liability for Limited Partnership Obligations

Kerns further contends that he should not be personally liable for the obligations of the limited partnership because he executed the Burwick and Walton Heath contracts in his capacity as a limited partner of Burwick Apartments, Ltd.

Neb. Rev. Stat. § 67-251 (Reissue 1996) outlines when a limited partner is liable for the obligations of the limited partnership. Section 67-251 provides in pertinent part:

> (a) . . . [A] limited partner is not liable for the obligations of a limited partnership unless he or she is also a general partner or, in addition to the exercise of his or her rights and powers as a limited partner, he or she participates in the control of the business. *However, if the limited partner participates in the control of the business, he or she is liable only to persons who transact business with the limited partnership with actual knowledge of his or her participation in control reasonably believing, based upon the limited partner's conduct, that the limited partner is a general partner.*

(Emphasis supplied.)

In the instant case, the evidence clearly shows that Kerns extensively participated in the control of the business despite his status as a limited partner. However, for a limited partner to be held liable for the obligations of a limited partnership, those persons who transact business with the limited partnership must reasonably believe that the limited partner is a general partner.

The evidence further reflects that Anderzhon knew Kerns had set up corporate and partnership entities for the apartment projects. The Burwick contract clearly reflects that Kerns signed the contract in his capacity as a limited partner of Burwick Apartments, Ltd. Further, Anderzhon admitted during his testimony that the contracts were entered between Anderzhon and the limited partnership, not Kerns; that Anderzhon was aware that Kerns signed the contract in his capacity as a limited part-

ner of Burwick Apartments, Ltd.; that Kerns never personally signed the contract; and that Kerns did not sign, nor did Anderzhon request Kerns to sign, a personal guarantee for the contract.

Based on the evidence in the record, we cannot say that Anderzhon reasonably believed that based on Kern's conduct that Kerns was a general partner of Burwick Apartments, Ltd. Therefore, we find that the district court was clearly wrong in finding Kerns individually liable for the limited partnership obligations with regard to the Burwick Apartments, Ltd., contract.

### 3. ORAL CONTRACTS

Next, the defendants contend that the district court erred in finding that the parties had entered into enforceable oral contracts relating to the Thornberry, Ashberry, Sussex Place, Kennamare, Devonshire, Wingpoint, and Greely projects.

In order to recover on an action for a breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with the conditions precedent which activate the defendant's duty. *Department of Banking, Receiver v. Wilken*, 217 Neb. 796, 352 N.W.2d 145 (1984).

As stated above, our review of this bench trial is limited. We accord the district court's finding of fact the same status as a jury verdict and affirm unless the finding is clearly wrong, and we view the evidence in the light most favorable to the successful party. See *City of LaVista v. Andersen*, 240 Neb. 3, 480 N.W.2d 185 (1992). We find that there was ample evidence for the trier of fact to conclude that the parties entered into an oral agreement for architectural services, that Anderzhon and FAFD provided the architectural services, and that the defendants did not pay for those services as agreed. Accordingly, we cannot say that the district court was clearly wrong in finding the parties had an oral contract for the Thornberry, Ashberry, Sussex Place, Kennamare, Devonshire, Wingpoint, and Greely projects. Therefore, this assigned error is without merit.

### 4. QUANTUM MERUIT

Next, the defendants contend that the district court erred in finding that FAL was also entitled to recover on the theory of

quantum meruit. The theory of quantum meruit is premised on the existence of a contract implied by law. *Tobin v. Flynn & Larsen Implement Co.*, 220 Neb. 259, 369 N.W.2d 96 (1985); *Tracy v. Tracy*, 7 Neb. App. 143, 581 N.W.2d 96 (1998). However, the law only implies a contract and allows a recovery under the theory of quantum meruit when the parties have not entered into an express agreement. See *Associated Wrecking v. Wiekhorst Bros.*, 228 Neb. 764, 424 N.W.2d 343 (1988).

Having previously determined in this opinion that the parties in the instant case entered into express agreements, we find that the district court was clearly wrong in finding that FAL was entitled to recover under the theory of quantum meruit.

## 5. Promissory Estoppel

Next, Kerns contends that the district court erred in finding that FAL was entitled to recover on the basis of promissory estoppel.

Having previously determined in this opinion that Kerns is personally liable to FAL for breaching the oral contracts with regard to the judgments relating to the Thornberry, Ashberry, Sussex Place, Kennamare, Devonshire, Wingpoint, and Greely projects, we now consider whether Kerns is also personally liable for the judgments relating to the Burwick and Walton Heath projects under the theory of promissory estoppel.

The doctrine of promissory estoppel is based on the proposition that a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. *Hawkins Constr. Co. v. Reiman Corp.*, 245 Neb. 131, 511 N.W.2d 113 (1994); *Whorley v. First Westside Bank*, 240 Neb. 975, 485 N.W.2d 578 (1992); *Rosnick v. Dinsmore*, 235 Neb. 738, 457 N.W.2d 793 (1990). Promissory estoppel requires that reliance be reasonable and foreseeable. *Whorley, supra*; *Rosnick, supra*.

Kerns contends that there is no evidence that he made any promises which Anderzhon could have reasonably relied upon. From our review of the record, it is clear that the trial court determined that Anderzhon's testimony was credible and that his

recollection was reliable; conversely, the court found Kern's testimony was not credible and his recollection unreliable. In a bench trial, the judge sitting as the trier of fact is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Waite v. A. S. Battiato Co.*, 238 Neb. 151, 469 N.W.2d 766 (1991); *Tracy v. Tracy, supra.*

Because the evidence in the record supports the district court's finding that Anderzhon performed architectural services in reliance on Kern's statements and that Anderzhon's reliance on Kern's representations was reasonable and foreseeable, and because it is not our province to reweigh the evidence, we cannot say the district court was clearly wrong in finding that Kerns was liable on the basis of promissory estoppel for the judgments relating to the Burwick and Walton Heath projects.

### 6. PREJUDGMENT INTEREST

Finally, the defendants contend that the district court erred in awarding prejudgment interest because a reasonable controversy existed as to FAL's right of recovery and as to the amount of the recovery FAL would be entitled.

To determine whether a litigant is entitled to prejudgment interest, we must first determine whether the claim is liquidated or unliquidated. A claim is unliquidated if a reasonable controversy exists concerning the claimant's right to recover or the amount of such a recovery. *Knox v. Cook*, 233 Neb. 387, 446 N.W.2d 1 (1989). Conversely, a claim is liquidated when no reasonable controversy exists as to the plaintiff's right to recover and it is possible to compute with exactness the amount owed. *Kaus v. Bideaux*, 709 F.2d 1221 (8th Cir. 1983).

Here, the evidence shows that the amount FAL claimed it was entitled to recover with respect to the Burwick project prior to trial was substantially different from the amount sought by FAL in the consolidated petition filed during the trial. In addition, the amounts claimed in FAL's original petition filed with regard to the Walton Heath project varies from the amount claimed by FAL in its consolidated petition filed during the trial and awarded by the district court. Finally, the amounts FAL claimed it was entitled to recover on the remaining projects also varies from the amount the district court awarded in its order of judgment.

We find that FAL was unable to compute with exactness the amount owed and that a reasonable controversy existed as to the amount FAL was entitled to recover. Accordingly, the claims of FAL were unliquidated.

In order for a plaintiff to be eligible to receive prejudgment interest on the balance for unliquidated claims, accruing after January 1, 1987, a litigant must comply with the requirements of Neb. Rev. Stat § 45-103.02 (Reissue 1998). *Label Concepts v. Westendorf Plastics*, 247 Neb. 560, 528 N.W.2d 335 (1995). Section 45-103.02 provides in relevant part:

> [Prejudgment] interest . . . shall accrue on the unpaid balance of unliquidated claims from the date of the plaintiff's first offer of settlement which is exceeded by the judgment until the rendition of judgment if all of the following conditions are met:
>
> (a) The offer is made in writing upon the defendant by certified mail, return receipt requested, to allow judgment to be taken in accordance with the terms and conditions stated in the offer;
>
> (b) The offer is made not less than ten days prior to the commencement of the trial;
>
> (c) A copy of the offer and proof of delivery to the defendant in the form of a receipt signed by the party or his or her attorney is filed with the clerk of the court in which the action is pending; and
>
> (d) The offer is not accepted prior to trial or within thirty days of the date of the offer, whichever occurs first.

In the instant case, FAL's cause of action clearly accrued after January 1, 1987. As a result, § 45-103.02 applies, and FAL was required to comply with its terms. The record before this court contains no evidence that FAL complied with § 45-103.02. Consequently, it was error for the district court to award prejudgment interest when FAL did not comply with the requirements of § 45-103.02, and we reverse that portion of the district court's order awarding FAL prejudgment interest.

## 7. Cross-Appeal

Finally, we address the remaining errors assigned by FAL on cross-appeal which have not previously been addressed in this opinion.

### (a) Kerns Individually Liable

First, FAL contends that the trial court erred in failing to find Kerns individually liable for the judgments awarded with respect to the Thornberry, Ashberry, Sussex Place, Greely, Wingpoint, and Kennamare projects.

Having reviewed the trial court's order, we find that the trial court did find Kerns individually liable for the judgments awarded with respect to these projects under the theory of breach of oral contract. Therefore, we reiterate for the sake of clarity that Kerns is individually liable for the judgments awarded with respect to the Thornberry, Ashberry, Sussex Place, Greely, Wingpoint, and Kennamare projects under the theory of breach of oral contract.

### (b) Postjudgment Interest

Next, FAL alleges that the district court erred in failing to award postjudgment interest at the rate of 18 percent on the Thornberry, Ashberry, Sussex Place, Greely, Wingpoint, and Kennamare projects, when it did so on the judgments relating to the Burwick and Walton Heath projects.

It is apparent from the district court's order that the court awarded postjudgment interest on the Burwick and Walton Heath judgments at the rate of 18 percent because the B181 contracts specifically provided the rate of interest on payments due Anderzhon and unpaid. However, it is equally apparent that the district court did not award postjudgment interest at the rate of 18 percent on the remaining projects because the court determined that the parties had not orally agreed to a rate of interest for the payments due Anderzhon and unpaid if any.

Neb. Rev. Stat. § 45-103 (Reissue 1998) provides the rate at which postjudgment interest shall accrue on judgments. Section 45-103 provides in pertinent part:

> Interest on decrees and judgments for the payment of money shall be fixed at a rate equal to one percentage point above the bond equivalent yield, as published by the Secretary of the Treasury of the United States, of the average accepted auction price for the last auction of fifty-two-week United States Treasury bills in effect on the date of judgment. The State Court Administrator shall distribute

notice of such rate and any changes to it to all Nebraska judges to be in effect two weeks after the date the auction price is published by the Secretary of the Treasury of the United States.

Accordingly, we cannot say the district court erred in failing to award postjudgment interest at the rate of 18 percent rather than the rate provided in § 45-103 for the judgments awarded on the Thornberry, Ashberry, Sussex Place, Greely, Wingpoint, and Kennamare projects.

## VI. CONCLUSION

The district court erred in overruling the special appearance of Burwick Apartments, Inc.; Thornberry Apartments, Ltd.; Sussex Place Apartments, Ltd.; Ashberry Apartments, Ltd.; and Walton Heath Apartments, Ltd. Therefore, the judgment entered against these defendants is vacated.

The district court further erred in finding Kerns individually liable for the obligations of Burwick Apartments, Ltd., and Walton Heath Apartments, Inc., because Kerns executed the contracts in his capacity as a limited partner of Burwick Apartments, Ltd., and as an officer of Walton Heath Apartments, Inc.

However, the district court did not err in finding that Anderzhon and Kerns had an enforceable oral contract for architectural services and that FAL was entitled to damages for breach of the oral contract; however, having determined that Anderzhon and Kerns entered enforceable oral contracts, we find that the district court erred in finding that FAL was also entitled to recover on the theory of quantum merit. Further, the district court did not err in finding Kerns liable to FAL for the judgments rendered with regard to the Burwick and Walton Heath projects under the theory of promissory estoppel, and that part of the judgment is so modified.

Finally, the portion of the district court's order awarding prejudgment interest is reversed for the reason that FAL failed to comply with § 45-103.02. We further find that the district court did not err in failing to award postjudgment interest at the rate of 18 percent rather than at the rate provided in § 45-103 on the

Thornberry, Ashberry, Sussex Place, Greely, Wingpoint, and Kennamare projects.

AFFIRMED IN PART, AFFIRMED IN PART AS MODIFIED, REVERSED AND DISMISSED IN PART, AND IN PART VACATED AND SET ASIDE.